**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

**SEEGER WEISS LLP**
Christopher A. Seeger
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656

*Co-Liaison Counsel for Lead Plaintiff and the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Matthew L. Mustokoff
Jamie M. McCall
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Lead Plaintiff and the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano
Adam H. Wierzbowski
Robert F. Kravetz
Aasiya Mirza Glover
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1448

*Additional Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE CELGENE CORPORATION SECURITIES LITIGATION | Case No. 2:18-cv-04772 (MEF) (JBC)<br><br>CLASS ACTION<br><br>MOTION DAY: July 7, 2025 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION TO EXCLUDE**
**SPECIFIC OPINIONS AND TESTIMONY OF DR. PAUL GOMPERS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

LEGAL STANDARD....................................................................................2

ARGUMENT ..........................................................................................3

I. Dr. Gompers's Opinion That the Change to Otezla 2020 Guidance Is "Not At Issue" Contravenes the Court's Rulings and Should Be Excluded ..........................................................3

II. Dr. Gompers Offers Inadmissible Opinions Setting Forth and Misapplying the Loss Causation Standard ..........................................6

A. Plaintiff is not required to identify a hypothetical "but-for" disclosure to prove loss causation ..........................................7

B. Dr. Gompers' "mismatch" standard misstates the law ............10

III. Dr. Gompers Should Be Precluded from Testifying As to What the Market Knew or Understood ..........................................12

IV. Dr. Gompers May Not Opine That a So-Called Materialization of the "Known" Risk Defeats Loss Causation ..................................13

V. Dr. Gompers's Speculative Opinion That the Price Declines *Could Have* Been Different Because They Reflected "Backdrop" Concerns About Celgene Should Be Excluded..................................15

VI. Certain of Dr. Gompers' Opinions Regarding the April 29, 2018 Corrective Disclosure Are Inadmissible ............................................18

CONCLUSION..........................................................................................24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alberici v. Recro Pharma, Inc.*,
2021 WL 798299 (E.D. Pa. 2021) ....................18

*In re Apple Inc. Sec. Litig.*,
2023 WL 4556765 (N.D. Cal. July 17, 2023) ....................7, 10, 11

*Apple, Inc. v. Samsung Elec. Co., Ltd.*,
2018 WL 2010621 (N.D. Cal. April 30, 2018)....................23

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2010 WL 6397501 (S.D. Fla. Aug. 23, 2010) ....................11

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................9

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ....................7, 8, 9

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ....................21, 22

*Casper v. SMG*,
389 F. Supp. 2d 618 (D.N.J. 2005)....................4

*Cave v. Saxon Mortg. Servs., Inc.*,
2015 WL 6153754 (E.D. Pa. Oct. 20, 2015) ....................3

*Chabot v. Walgreens Boots All., Inc.*,
2023 WL 2908827 (M.D. Pa. March 31, 2023) ....................19

*Dominguez on Behalf of Himself v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018) ....................5, 17

*In re DVI, Inc. Sec. Litig.*,
2010 WL 3522090 (E.D. Pa. Sept. 3, 2010)....................11, 22

*In re Eros Int'l PLC Sec. Litig.*,
2021 WL 1560728 (D.N.J. Apr. 20, 2021)....................10

*Schneider ex rel. Est. of Schneider v. Fried*,
320 F.3d 396 (3d Cir. 2003) ....................................................................2

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)....................................................................................17

*Gov't Emps. Ins. Co. v. Adams Chiropractic Ctr. P.C.*,
2023 WL 4248817 (D.N.J. June 29, 2023)...............................................2, 3

*Grain Processing Corp. v. Virgin Scent, Inc.*,
2022 WL 14624968 (S.D. Iowa July 7, 2022)...............................................6

*In re Grand Canyon Educ., Inc. Sec. Litig.*,
2023 WL 2072227 (D. Del. Feb. 17, 2023)..................................................20

*Hsu v. Puma Biotechnology, Inc.*,
Case No. 8:15-cv-00865 (C.D. Cal.) .....................................................13, 23

*Intell. Ventures I LLC v. Xilinx, Inc.*,
2014 WL 1814384 (D. Del. Apr. 14, 2014) ..................................................7

*McCabe v. Ernst & Young, LLP*,
494 F.3d 418 (3d Cir. 2007) ...........................................................7, 9, 19

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
232 F. Supp. 3d 558 (S.D.N.Y. 2017) ........................................................12

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019) ..................................................................5

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
2013 WL 6535164 (C.D. Cal. Dec. 9, 2013)................................................23

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
877 F.3d 687 (6th Cir. 2017) .....................................................................22

*In re Novatel Wireless Sec. Litig.*,
846 F. Supp. 2d 1104 (S.D. Cal. 2012)..........................................................7

*Patrick v. Morman*,
536 F. App'x 255 (3d Cir. 2013) ...................................................................8

*Ramara Inc. v. Westfield Ins. Co.*,
814 F.3d 660 (3d Cir. 2016) ....................................................................9

*Ramara, Inc. v. Westfield Ins. Co.*,
298 F.R.D. 219 (E.D. Pa. 2014)....................................................................9

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ....................................................................13

*S.E.C. v. Daifotis*,
2012 WL 2051193 (N.D. Cal. June 7, 2012)....................................................12

*S.E.C. v. Ripple Labs, Inc.*,
2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023)....................................................10

*S.E.C. v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013) ............................................................10

*Sikkelee v. Precision Airmotive Corp.*,
522 F. Supp. 3d 120 (M.D. Pa. 2021)..............................................................17

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ..........................................................................6

*Tomaszewski v. Trevena, Inc.*,
482 F. Supp. 3d 317 (E.D. Pa. 2020)..............................................................18

*United States v. Fallon*,
61 F.4th 95 (3d Cir. 2023) ....................................................3, 6, 14, 17

*United States v. Martoma*,
993 F. Supp. 2d 452 (S.D.N.Y. 2014) ......................................................11, 18

*United States v. Schiff*,
538 F. Supp. 2d 818 (D.N.J. 2008)..................................................................12

*In re Urban Outfitters, Inc. Sec. Litig.*,
103 F. Supp. 3d 635 (E.D. Pa. 2015)..............................................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
634 F. Supp. 2d 352 (S.D.N.Y. 2009) ......................................................10, 14

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
2020 WL 3169506 (D.N.J. June 12, 2020)....................................................20

**Statutes and Rules**

Fed. R. Evid. 401 ........................................................................................1

Fed. R. Evid. 403 ..........................................................................1, 3, 14, 17

Fed. R. Evid. 702 ....................................................................................1, 2

**Other Authorities**

*Restatement (Second) of Torts* § 431 (1965) ...................................................9

# INTRODUCTION

Lead Plaintiff AMF Tjänstepension AB ("AMF"), respectfully moves the Court to exclude certain of the opinions and expert testimony offered by Defendants' damages expert, Dr. Paul Gompers, under Federal Rules of Evidence 401, 403, and 702.[1]

While Plaintiff does not challenge Dr. Gompers's qualifications, nor seek to exclude his opinions in their entirety, there are six specific topics upon which Dr. Gompers impermissibly opines, each of which must be excluded:

(1) Dr. Gompers's opinion that Celgene's October 26, 2017 revisions to its 2020 revenue guidance are "not at issue in this case," when this Court already found that they are, and Plaintiff pleaded as such in the Complaint;

(2) Dr. Gompers's improper legal opinions setting forth and misapplying the loss causation standard, including his opinions that "to establish loss causation" Plaintiff must (i) specify a hypothetical "but-for disclosure" that "defendants allegedly could and should have disclosed instead of

---

[1] "PX" refers to the exhibits attached to the accompanying Omnibus Declaration of James E. Cecchi; all references to "¶," "§," or "Report" are to PX 27, the Expert Report of Dr. Gompers, dated August 12, 2022 and to "Tr." are to PX 28, the transcript of the deposition of Dr. Gompers, dated September 29, 2022. Unless otherwise stated, all internal citations are omitted and all emphasis is added.

the alleged misrepresentation" and (ii) prove there is a literal match between the alleged misstatements and the alleged corrective disclosures;

(3) Dr. Gompers's impermissible state of mind opinion regarding what investors or analysts "knew" or "understood";

(4) Dr. Gompers's improper opinion that the so-called materialization of the "known" risk precludes a finding of loss causation;

(5) Dr. Gompers's speculative opinion that Celgene's negative price reactions "could" have or "may" have reflected a "backdrop" of concerns compounded by prior negative news; and

(6) Dr. Gompers's reliance on irrelevant post-class period evidence in opining on the April 29, 2018 Ozanimod corrective disclosure.

As set forth below, each of these opinions is unreliable and inadmissible. Further, any minimal probative value of such evidence is outweighed by the danger of substantial prejudice and jury confusion.

## <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The proponent of expert testimony must establish each by a preponderance of the evidence. *See Gov't Emps. Ins. Co. v.*

*Adams Chiropractic Ctr. P.C.*, 2023 WL 4248817, at *2 (D.N.J. June 29, 2023); Fed. R. Evid. 702 advisory committee's notes to 2023 amendments (Rule 702 applies "the preponderance of the evidence standard"). "In deciding whether to admit expert testimony, the trial court is a 'gatekeeper' tasked with 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Adams Chiropractic*, 2023 WL 4248817, at *2.

Expert testimony may also be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Fallon*, 61 F.4th 95, 109-10 (3d Cir. 2023) (expert testimony that impermissibly opined on the law and the defendants' purported good faith beliefs violated Rule 403).

## ARGUMENT

### I. Dr. Gompers's Opinion That the Change to Otezla 2020 Guidance Is "Not At Issue" Contravenes the Court's Rulings and Should Be Excluded

Expert testimony that deviates from the court's prior rulings is "*per se* unreliable and inadmissible under *Daubert*." *Cave v. Saxon Mortg. Servs., Inc.*, 2015 WL 6153754, at *9 (E.D. Pa. Oct. 20, 2015). Moreover, courts should exclude expert testimony that could confuse the jury about what issues remain in the case. *See Fallon*, 61 F.4th at 109-10.

Here, Dr. Gompers opines that Dr. David Tabak, Plaintiff's damages expert, should have disaggregated from the Otezla-based price decline on October 26, 2017 any decline associated with Celgene's revisions to its 2020 revenue guidance, explaining that "[Defendants'] Counsel instructed me—or told me that—that the announced revisions to 2020 guidance ***were not actionable***. They were not corrective of the alleged misstatements or omissions." Tr. 11:2-6; *see also id.* 10:1-25; ¶¶ 19, 46-47. Dr. Gompers made clear that he "was asked to write my expert report and – under the understanding that the revisions to the 2020 guidance ***were not actionable***." Tr. 18:4-11. Dr. Gompers acknowledged that his assumption "seems to me to ***sort of require sort of a legal determination***." *Id*. 11:16-21.

An expert like Dr. Gompers may not opine on what is legally "actionable" in this case. That determination rests solely with the Court. *See Casper v. SMG*, 389 F. Supp. 2d 618, 621 (D.N.J. 2005) (experts may not testify as to "what the law required"). Dr. Gompers's legal assumption that the 2020 guidance revision is "not at issue in this case" squarely contradicts this Court's prior rulings and rests on a mischaracterization of Plaintiff's allegations.

More than five years ago, Judge Vasquez held that "Plaintiff appropriately alleges loss causation with respect to Otezla" based on Plaintiff's allegation that, among other things, "Celgene announced that it lowered . . . the 2020 I&I projection by over $1 billion because of 'dismal' Otezla sales numbers." ECF No. 75 at 47. The

Court's class certification opinion again recognized that Plaintiff alleged that Celgene lowered 2020 guidance "in light of the dismal Otezla sales numbers." ECF No. 114 at 2. Further, the Third Amended Complaint (filed months before Dr. Gompers's report), alleged that Celgene "lower[ed] its fiscal 2020 guidance as a result of the poor Otezla results" announced on October 26, 2017. ECF No. 175 ¶ 428; *see also id.* ¶¶ 429-436 (alleging analyst reactions to Otezla-driven 2020 guidance revisions); ECF No. 363 (Pretrial Order), Plaintiff's Contested Facts § A ¶¶ 133-39, § B ¶¶ 3-6 (discussing Celgene's reduction in 2020 guidance as part of the corrective information revealed on October 26, 2017).

As Dr. Gompers acknowledged in his deposition, the ***sole*** basis for his opinion that Dr. Tabak was required to disaggregate the 2020 guidance revision was his incorrect legal assumption that the 2020 guidance revision is "not at issue in the case." Tr. 10:1-25; ¶¶ 19, 46-47. But because that assumption is incorrect, Dr. Gompers' opinion as to the 2020 guidance is unreliable, irrelevant, and will confuse the jury. *See, e.g., Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 400 (N.D. Ga. 2019) (finding that "Professor Gompers' criticisms on this point, which he concedes are based on an understanding of Plaintiffs' legal theory provided by defense counsel, are inapposite" and noting that "Professor Gompers highlighted his misunderstanding of Plaintiffs' allegations at the evidentiary hearing"); *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 120-21 (3d Cir. 2018) (affirming

exclusion of expert report because it "does not shed light on the key factual question actually at issue in this case" and "lacks fit or relevance").

Based on his erroneous assumption that the 2020 guidance revision is not at issue, Dr. Gompers provides an "illustrative estimate" of artificial inflation disaggregating the price decline attributable to the 2020 guidance revisions. ¶¶ 50-51. Because Dr. Gompers's "illustration" is grounded in the same improper legal assumption that the 2020 guidance revision is "not at issue," ¶¶ 46-47, it is likewise irrelevant, unreliable, and unhelpful to the jury.[2] *See Fallon*, 61 F.4th at 109-10.

Accordingly, the Court should exclude paragraphs 7(a)(ii), 19, 45-51 of the Gompers Report and preclude Dr. Gompers from testifying to the same to the jury.

## II. Dr. Gompers Offers Inadmissible Opinions Setting Forth and Misapplying the Loss Causation Standard

Dr. Gompers offers two inadmissible opinions setting forth and misapplying the loss causation standard. First, he claims that Plaintiff must identify a hypothetical "but-for" disclosure "to establish loss causation," an opinion that misunderstands the governing legal standard and will result in substantial prejudice and jury confusion.

---

[2] Courts find so-called "illustrative" examples unhelpful to the jury. *See In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). This is especially true where, as here, the expert affirmatively testifies that the example is "***not*** being offered as an affirmative damages calculation." Tr. 57:22-58:11, 63:2-7. *See Grain Processing Corp. v. Virgin Scent, Inc.*, 2022 WL 14624968, at *3, *6-8 (S.D. Iowa July 7, 2022) (excluding expert's "illustrative analysis," which was not intended to "provide an estimate of damages" or "an alternative calculation").

Second, he misstates the law in suggesting that Plaintiff must establish a literal "match" between the alleged misstatement and the alleged corrective disclosure.

### A. Plaintiff is not required to identify a hypothetical "but-for" disclosure to prove loss causation

The Third Circuit has emphasized that "but for" causation (i.e., reliance or transaction causation) and loss causation are distinct elements of Section 10(b) that are to be "analyzed [] separately," and that it has "never allowed the elements to merge." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425, 429-30 (3d Cir. 2007); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006) (explaining the difference between "but for" causation and loss causation). Yet Dr. Gompers conflates the elements of reliance and loss causation by opining that it is necessary to identify a hypothetical, ***but-for disclosure to prove loss causation***. *See* ¶¶ 29-32. This misstates the law and "misleadingly implies that but-for causation is the legal standard" for loss causation. *See In re Apple Inc. Sec. Litig.*, 2023 WL 4556765, at *10 (N.D. Cal. July 17, 2023) (excluding expert opinion that "'a key step in assessing loss causation is to determine the but-for disclosure'"); *see also In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding opinion "based on a loss causation standard that is incompatible with [the law]"); *Intell. Ventures I LLC v. Xilinx, Inc.*, 2014 WL 1814384, at *3-4 (D. Del. Apr. 14, 2014) (striking opinion because expert's "understanding of the law is incorrect," which "renders his opinion unreliable").

Contrary to that established precedent, Dr. Gompers opines that, "to ***establish loss causation***," a plaintiff's expert "must identify the ***'but-for'*** disclosure, i.e., the information that defendants allegedly could and should have disclosed instead of the alleged misrepresentations." ¶ 30; *see also* ¶ 31 ("to ***establish loss causation***, the economist must demonstrate the connection between the alleged corrective disclosure and the but-for disclosure"); ¶ 95 ("in order to ***establish loss causation***, the economist must also identify the but-for disclosure"). Critically, Dr. Gompers cites nothing in support of his opinion that the identification of a hypothetical disclosure is required to prove loss causation—no law, no case law, no economics treatise, and no peer-reviewed or other academic or legal articles.

Dr. Gompers's unsupported *ipse dixit* should be precluded because it misstates the law, is unreliable, and prejudicial. Rule 704 "prohibits experts from opining about the ultimate legal conclusion or about the law or legal standards." *Patrick v. Morman*, 536 F. App'x 255, 258 (3d Cir. 2013) (citing *Berckeley,* 455 F.3d at 217). Yet Dr. Gompers purports to instruct the jury on the governing law by asserting that Dr. Tabak was ***required*** to undertake a certain type of analysis "to establish loss causation." Such opinions are inadmissible.

As the Third Circuit explained in *Berckeley*: "Causation in the securities context is strikingly similar to the familiar standard in the torts context, but with different labels. In the securities realm, 'but for' causation is referred to as 'reliance,

or transaction causation,' and 'proximate cause' is known as 'loss causation.'" 455 F.3d at 222. "In order to establish reliance, or transaction causation, a Section 10(b) plaintiff must prove that '***but for*** the fraudulent misrepresentation, the investor would not have purchased or sold the security.'" *Id.* Here, Plaintiff will establish reliance through the "fraud-on-the-market" presumption under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), which the Court determined applies and which Defendants failed to rebut at class certification. ECF No. 114 at 46.

In contrast, "loss causation focuses on whether the defendant should be held responsible as a matter of public policy for the losses suffered by the plaintiff." *Berckeley*, 455 F.3d at 222; *see also Ramara Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 675 (3d Cir. 2016) ("The concept is essentially a limiting principle that functions as 'shorthand for the policy-based judgment that not all factual causes contributing to an injury should be legally cognizable causes.'"). To prove loss causation, "the plaintiff must show that the revelation of that misrepresentation or omission was a ***substantial factor*** in causing a decline in the security's price." *McCabe*, 494 F.3d at 428; *Ramara*, 814 F.3d at 675 (citing *Restatement (Second) of Torts* § 431 (1965)). Whether conduct is a "substantial factor" turns on "whether the defendant's conduct[,] ***although a cause in the 'but for' sense***[,] ***is so insignificant*** that no ordinary mind would think of it as a cause for which a defendant should be held responsible." *Ramara, Inc. v. Westfield Ins. Co.*, 298 F.R.D. 219, 224 (E.D. Pa.

2014).

Allowing Dr. Gompers to opine that Plaintiff's expert must provide a hypothetical "but-for" disclosure to establish loss causation improperly conflates these elements, misstates the law, and will result in substantial jury confusion. *See Apple*, 2023 WL 4556765, at *10.[3]

**B. Dr. Gompers' "mismatch" standard misstates the law**

Dr. Gompers also misstates the law when he suggests that "to reliably establish loss causation" Plaintiff must show a literal "match" between the alleged misstatement and the corrective disclosure. *See, e.g.*, § VI.B, ¶¶ 71, 75.

Third Circuit law is clear that a corrective disclosure need only "be related to the same subject as" the challenged misrepresentation or omission and "not some other adverse facts about the company." *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 655-56 (E.D. Pa. 2015). "[T]here is no requirement that the [corrective] disclosure mirror the earlier misrepresentation." *Id. See also In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *15 (D.N.J. Apr. 20, 2021) (same); *In*

[3] It is no answer for Defendants to claim that Dr. Gompers was merely offering an "economic" rather than a legal analysis. *See S.E.C. v. Ripple Labs, Inc.*, 2023 WL 5670711, at *22 (S.D.N.Y. Mar. 6, 2023) ("'inserting the word "economically" . . . does not somehow transform what is a legal proposition and a finding of fact into an admissible opinion'") (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013)). Offering an analysis that is inconsistent with a legal standard is a recipe for jury confusion.

*re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 367 (S.D.N.Y. 2009) ("Establishing [loss causation] does not . . . require plaintiffs to establish a one-to-one correspondence between the concealed facts and the materialization of the risk"). That is because "[i]f a fact-for-fact disclosure were required . . . a defendant could defeat liability by refusing to admit the falsity of its prior misstatements." *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010).

Despite this clear precedent, Dr. Gompers presses the false legal premise that Dr. Tabak did not account for a purported "mismatch" between the text of the July 27, 2017 alleged Otezla misstatement and the October 26, 2017 corrective disclosure, § VI.B, in order "to reliably establish loss causation." ¶ 75; *see also* ¶ 71.[4] That opinion—regarding what an opposing expert must determine to establish an element of the claim—is inadmissible because it purports to identify the applicable legal standard and conflicts with the law. *Supra* § II.A.

The Court should therefore exclude Section VI.B and paragraphs 7(b) and 65-75 of the Gompers Report and preclude Dr. Gompers from testifying to the same to

---

[4] Dr. Gompers' mismatch opinion consists of nothing more than "parroting" the language of the corrective disclosure and doing a literal comparison to the false statements. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6397501, at *3 (S.D. Fla. Aug. 23, 2010). Having conducted no event study to counter Dr. Tabak's event study, this is not an opinion that requires the "special[ized] competence" of an economist. *Apple*, 2023 WL 4556765, at *5; *see also United States v. Martoma*, 993 F. Supp. 2d 452, 458-59 (S.D.N.Y. 2014) (excluding opinion by Dr. Gompers where he failed to connect his analysis via an event study).

the jury.

### III. Dr. Gompers Should Be Precluded from Testifying As to What the Market Knew or Understood

Dr. Gompers also cannot provide an opinion as to what was "known to the market" prior to the alleged corrective disclosures.[5] *United States v. Schiff*, 538 F. Supp. 2d 818, 846 (D.N.J. 2008).

Though an expert may opine that certain information was "available to the public" if based on "knowledge of business practices within the industry," an expert may not testify as to what analysts "subjectively knew or did not know." *Id.*; *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017) (testimony to "what market participants did or did not understand" is "impermissible speculation," which courts must preclude); *S.E.C. v. Daifotis*, 2012 WL 2051193, at *5 (N.D. Cal. June 7, 2012) (excluding opinions about "what investors 'actually understood' or 'should have understood'").

That reasoning applies here, and Dr. Gompers' specific opinions regarding what was "known to the market" in ¶¶ 7(iii), 52, 55, 84, and 94 of his Report are inadmissible state of mind opinions that should be excluded.

[5] As part of the meet-and-confer process, the parties have agreed that experts may not offer opinions as to the state of mind of third parties. *See* PX 1 at 17.

## IV. Dr. Gompers May Not Opine That a So-Called Materialization of the "Known" Risk Defeats Loss Causation

Dr. Gompers also offers the improper legal opinion that Dr. Tabak did not "***establish loss causation***" because he did not disaggregate a speculative stock price reaction to the materialization of purportedly "known" risks that "revenue guidance for Otezla would not be met or would be revised," and "that delays or rejections could occur during the regulatory approval process for Ozanimod." ¶¶ 7(a)(iii), 8(c), 58, 81, 86.

This opinion conflates the law as to loss causation and damages and risks significant jury confusion. As stated *supra* § II, Plaintiff establishes loss causation by proving that a cause of the stock drop was a substantial factor of the harm (i.e., not insignificant or trivial). Even assuming that there is some evidence of the "materialization of a known risk" (there is not), the degree to which such a risk materialized relates not to ***loss causation*** (a question of liability) but to the amount of ***damages***. *See* ¶¶ 7, 8 (stating that Dr. Tabak failed to "***establish loss causation***" with respect to Otezla and Ozanimod). "[A]s long as the misrepresentation is one substantial cause of the investment's decline in value, other contributing forces will not bar recovery under the loss causation requirement ***[but will play a role] in determining recoverable damages***." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997); *see also Hsu v. Puma Biotechnology, Inc.*, Case No. 8:15-cv-00865 (C.D. Cal.) ("*Puma Biotechnology*"), ECF No. 700 (Jury

Instructions) at 36-37 (instructing jury it may establish causation if the alleged misrepresentations "played a substantial part in causing the Puma stock price declines" and damages if the plaintiff "separate[es] out the share price decline, if any, caused by factors others than the alleged misrepresentation or omissions").[6]

Indeed, Dr. Gompers claims that the materialization of the known risk may "overstate inflation" ¶ 56 (i.e., incorrectly calculates the quantum of damages), and then criticizes Dr. Tabak for failing to "isolate the portion" of price declines reflecting the so-called materialization of known risk. While Dr. Gompers may critique Dr. Tabak for purportedly overstating ***damages***, it would be unduly prejudicial for him to frame that opinion as a failure to establish loss causation. *See, e.g., Vivendi*, 634 F. Supp. 2d at 364-65 ("***[I]t is important not to confuse causation with damages*** when comparing competing causes for a stock decline. In theory, plaintiffs need only prove that they suffered some damage from the fraud. Liability obviously does not hinge on ***how much*** damage."). Such an opinion, which would confuse "the relevant source of the law," violates Rule 403. *Fallon,* 61 F.4th at 109-

---

[6] To the extent Dr. Gompers is suggesting that any materialization of "known risks" shows that Dr. Tabak did not "establish ***loss causation***," ¶¶ 7, 8, (as opposed to damages), he is opining that the decline due to the materialization of known risks was so great that the fraud was not a "substantial factor" (i.e., insignificant) in causing Plaintiffs' loss. *Supra* § II. But Dr. Gompers has performed ***no quantitative analysis*** and has provided ***no data*** as to whether any such "known" risks were so great as to defeat loss causation entirely given the existence of other causes that could have contributed to the loss.

10.

The Court should thus preclude Dr. Gompers from testifying that a purported overstatement of inflation defeats or otherwise precludes a finding of loss causation.

## V. Dr. Gompers's Speculative Opinion That the Price Declines *Could Have* Been Different Because They Reflected "Backdrop" Concerns About Celgene Should Be Excluded

Dr. Gompers also opines that the price declines on October 26, 2017 and February 28, 2018 "may have" or "could have" been greater than what they would have been if Celgene had disclosed the truth earlier, due to a potential compounding effect of previous negative disclosures. § VI.A.5; ¶¶ 65, 68, 87, 89.[7] In other words, Dr. Gompers opines that the price declines ***might*** not have been as negative on the corrective disclosure dates had Celgene not been in the midst of a streak of poor performance, and that Plaintiff cannot recover damages that may have been aggravated by the market's overall negative assessment of Celgene's recent performance.

Dr. Gompers's opinion that Plaintiff's damages must be reduced based on a

[7] Specifically, Dr. Gompers claims that the October 26, 2017 corrective disclosure "was made against the backdrop of the setback regarding GED-0301 that resulted in increased scrutiny on the Company's management credibility, pipeline of drugs, and revenue guidance." ¶ 68. He also contends that the Ozanimod RTF announcement on February 27, 2018 "was made against the backdrop of a series of recent, unexpected setbacks for the Company," including the GED-0301 failure, the 2020 guidance revisions, and the delayed Ozanimod timeline—all announced months earlier in October 2017. ¶¶ 88-89.

counterfactual world in which there was ***no*** "increased scrutiny on the Company's management credibility, pipeline of drugs, and revenue guidance," ¶ 68, is wholly speculative and unreliable. Indeed, while Dr. Gompers testified at deposition that "generally speaking, there's an academic literature here that looks at what happens in a series of disappointing announcements," he could not specify that literature or point to where he cited it in his report. Tr. at 47:14-18. Even this unspecified literature, according to Dr. Gompers, only suggests that "subsequent [negative] announcements ***potentially*** would have a more severe negative reaction than it would if it was announced in the—outside the context of the—those series of negative events." *Id*. 48:4-8. Yet Dr. Gompers concedes that he did no "statistical analysis to test that assumption" in this case. *Id*. at 48:10-12. Nor does Dr. Gompers explain how stock declines caused by a corrective disclosure are greater following prior negative news, the precise circumstances in which such a "backdrop" effect would occur, or that such an effect can or has been measured, not to mention that the effect would even go in the direction that Dr. Gompers claims it would.[8]

[8] In contrast, in responding to Dr. Gompers, Dr. Tabak has shown that, using data from analyst reports to disaggregate the October 17, 2017 stock price decline, even if such effects were present in this case (which has not been demonstrated), accounting for such "backdrop" information would have resulted in a ***greater*** measure of inflation. PX 29 ¶ 35. Dr. Tabak further explains, using analyst data, that if such effects were present in this case, the price decline following the February 27, 2018 corrective disclosure could have been *larger* under Dr. Gompers' theory.

The type of unreliable opinion that Dr. Gompers provides here is inadmissible. *See, e.g.*, *Martoma*, 993 F. Supp. 2d at 458-49 (excluding Dr. Gompers's proposed testimony that the market for a particular stock was "generally overheated in the two months prior to the public disclosure of the clinical trial results" as irrelevant to the "sudden decline in the stock price," particularly where Dr. Gompers did not "attempt to connect the sudden decline in stock price to any other particular event" via an event study). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see, e.g.*, *Dominguez*, 894 F.3d at 120 (excluding speculative opinion based on "overbroad, generalized assumptions"); *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 157-58 (M.D. Pa. 2021) (economist's opinion providing "nothing more than conclusory assurances that his expert opinion is reliable" was inadmissible *ipse dixit*).

Dr. Gompers' conclusory opinion likewise presents an acute danger of confusing and misleading the jury as to the correct measure of damages through the testimony of a "well-credentialed" Harvard professor, who offers no evidentiary support for his position. *See, e.g.*, *Fallon*, 61 F.4th at 109-10 (excluding expert

---

PX 29 ¶¶ 43-47. Dr. Gompers failed to perform any similar type of analysis in rendering his speculative opinion.

evidence under Rule 403).

The Court should therefore prohibit Dr. Gompers from proffering the opinions contained in Sections VI.A.5 and VII.C and paragraphs 7(a)(v), 8(c), 65-68, and 87-90 of his Report.

## VI. Certain of Dr. Gompers' Opinions Regarding the April 29, 2018 Corrective Disclosure Are Inadmissible

Finally, Dr. Gompers's introduction of events occurring long after the end of the Class Period to criticize Dr. Tabak's loss causation analysis of the April 29, 2018 Morgan Stanley report relies on a clear misapplication of the loss causation standard and would result in substantial jury confusion and prejudice. ¶¶ 94-96. As set forth in Plaintiff's Motion *in Limine* to Preclude Introduction of Celgene's Resubmission of New Drug Application, Ultimate Regulatory Approval, and Present-Day Effectiveness of Ozanimod, evidence of the FDA's subsequent approval of Ozanimod is inadmissible as to falsity or scienter.[9]

Similarly, Defendants' reliance on events long after the final corrective

---

[9] *See, e.g.*, *Alberici v. Recro Pharma, Inc.*, 2021 WL 798299, at *7 (E.D. Pa. 2021) (FDA approval "almost two years after the end of the class period does not indicate that the statements were not false or misleading at the time they were made.") (emphasis omitted); *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 334 n.100 (E.D. Pa. 2020) (FDA approval after the class period "has no bearing on Plaintiffs' allegation that during the class period Defendants deceived investors"); *see also Martoma*, 993 F. Supp. 2d at 456-57 (excluding analysis by Dr. Gompers in 2014 as probative of the defendant's state of mind in 2008 because it "presents a significant risk of confusing the jury").

disclosure date to try to demonstrate a lack of loss causation is irrelevant and not helpful to the jury. The relevant loss causation inquiry is whether the defendant's misrepresentation or omission was a substantial factor in the harm resulting at the time of the corrective disclosure revealing the falsity of the misrepresentation or omission. *See McCabe*, 494 F.3d at 430-31. Looking at events in hindsight—years after the corrective disclosure—does not assist the jury and will only confuse them.

Through the Gompers Report, Defendants attempt to make an end-run around the clear inadmissibility of such evidence by seeking to introduce it through a purported "criticism" of Dr. Tabak's loss causation methodology. Specifically, Dr. Gompers states that he "understand[s] from counsel that Celgene did not need to run either of the preclinical toxicology studies noted by Morgan Stanley," and that Dr. Tabak's failure to "take into account that Celgene could not have disclosed the need to run those studies" precludes a finding that the information "should have been revealed in a but-for disclosure . . . during the Class Period." ¶¶ 95-96.

But that opinion advances the same flawed "hypothetical" disclosure requirement that is inadmissible for the reasons described *supra* § III. More importantly, it ignores that the relevant loss causation inquiry focuses not on "the ***facts revealed*** in [the] corrective disclosures, but [on] ***what those facts reveal***" about the falsity of prior misrepresentations or omissions. *Chabot v. Walgreens Boots All., Inc.*, 2023 WL 2908827, at *20 (M.D. Pa. March 31, 2023) (emphasis in original);

*see id.* at *21 ("The crux of plaintiffs' claim is defendants repeatedly represented the state of the FTC approval process as being more promising than they knew it to be. [Plaintiffs' expert] emphasizes the selected corrective disclosure events not because he believes [the defendant] should have clairvoyantly disclosed them before they happened, but because they could fairly be viewed as revealing to the public what [the defendant] long knew internally."); *see also Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *11 (D.N.J. June 12, 2020) (question is whether disclosure "reveal[ed] the falsity of the alleged misrepresentation, and introduce[d] . . . new information to the market, . . . resulting in a price correction"). That is, a disclosure is corrective if it "could reasonably have conveyed to investors" the relevant truth concealed by Defendants' fraud. *In re Grand Canyon Educ., Inc. Sec. Litig.*, 2023 WL 2072227, at *31 (D. Del. Feb. 17, 2023).

Dr. Gompers' narrow emphasis on the fact that Celgene did not ultimately rerun all the tests identified in the Morgan Stanley report is misplaced and will confuse the jury as to the correct focus of the inquiry. As Dr. Tabak explains, the "new information" that caused Celgene's stock price to drop following the April 29, 2018 Morgan Stanley report was "the ***newly available data*** described in the [] report and ***the analysis enabled by that data*** . . . ." PX 29 ¶ 52.[10] Dr. Tabak continues:

[10] Specifically, the "newly available data" included "the information in the Receptos AAN conference posters regarding the metabolite-to-parent drug concentration

> The relevant question . . . is what would have happened had Celgene made an earlier disclosure regarding evidence of the existence of the Metabolite. . . . [M]y assumption is that just as the market reacted to Celgene's April 25, 2018 disclosure ***by seeking out new information and analyzing that information to reach a conclusion in April 2018***, it would have done the same thing in the same timeframe had Celgene disclosed evidence of the Metabolite at an earlier point in time.

*Id*. ¶¶ 52-53.

Dr. Tabak's Report thus focuses on the information actually disclosed in April 2018 and the market's analysis of that information. Yet, to rebut this analysis, Dr. Gompers—rather than focus on whether the disclosed information revealed the falsity of the misstatements or omissions about the Metabolite—focuses on events well after the corrective disclosure: namely, the fact that the Ozanimod resubmission in March 2019 ultimately did not include all the tests described in the Morgan Stanley Report.

Dr. Gompers' criticism that Dr. Tabak failed to account for the fact that "Celgene could not have disclosed the need to run [the toxicology] studies" that it ultimately did not need to rerun (¶ 95) is of no consequence. As the Ninth Circuit explained in *In re BofI Holding, Inc. Securities Litigation*:

---

rations in the toxicology studies of the previously discovered Ozanimod metabolites" and "calculations estimating the relevant human dose of the newly discovered CC112273 metabolite based on that and other data from the Receptos AAN posters." *Id*. ¶ 50. Judge Vasquez agreed that "the April 29 report provided the market with new, corrective information about the Metabolite discovery," and that, as a result, "Celgene's common stock declined 4.5%." ECF No. 198 at 12.

> In analyzing loss causation, we . . . begin with the premise that [the defendant's] misstatements *were* false and ask whether the market at some point learned of their falsity—through whatever means. Viewed through that prism, ***the relevant question for loss causation purposes is whether the market reasonably perceived [the disclosure] as true and acted upon [it] accordingly***. . . . If the market recalibrated [the company's] stock price on the assumption that [the disclosure] [was] true—and thus that [the company's] prior misstatements were false—then the drop in [the company's] stock price represented dissipation of inflation rather than a reaction other fraud-related news.

977 F.3d 781, 792 (9th Cir. 2020) (emphasis in original in part, added in part) (citing *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 696 (6th Cir. 2017) (inquiry when evaluating a corrective disclosure is "whether the market could have perceived it as true")); *see also DVI*, 2010 WL 3522090, at *17-19, *23 (expert's opinion that analyst's "'speculation' about DVI's 'liquidity squeeze,'" and rating agency report expressing "concern that DVI may be in default," raised "a genuine issue of material fact with regard to whether these partial disclosures revealed the truth about [d]efendant's alleged misstatements").

Again, Dr. Tabak "did not assume that ***Celgene*** would have made such disclosures [about the need to rerun certain studies], but, rather, that consistent with Celgene's actual April 25, 2018 disclosure, it would have merely disclosed evidence of the existence of the Metabolite and the market would have reacted to that disclosure the same way that it did to the April 25, 2018 Celgene disclosure," i.e., analysts like Morgan Stanley would have seen the news about the Metabolite and proceeded to seek out and analyze information about the Metabolite's characteristics

in the ensuing days. PX 29 ¶ 54 (emphasis in original).

Dr. Gompers could have criticized those ***actual*** conclusions from Dr. Tabak, including, for example, by performing his own event study to analyze market movements and market conditions. But he failed to do so. Indeed, as Judge Vasquez previously noted, Defendants "do not provide an alternative explanation for the stock drop" following the April 29, 2018 corrective disclosure. ECF No. 198 at 12. Instead, Dr. Gompers opted to introduce irrelevant post-class period evidence into his analysis of the disclosure.

Finally, even if such evidence is minimally probative as to loss causation (it is not), permitting Defendants to allude to Celgene's subsequent, post-Class Period interactions with the FDA through the back-door of a loss causation opinion (consisting of three sentences at the end of a 96-paragraph report) would result in substantial prejudice and require additional evidence as to the context of Defendants' interactions with the FDA. The jury no doubt would be confused as to the limited purpose for which it could consider the evidence. *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2013 WL 6535164, at *16 (C.D. Cal. Dec. 9, 2013) (excluding evidence from "outside the Class Period," finding the "minimal relevance" of such evidence to be "substantially outweighed by the danger of prejudice and confusion of the issues"); *Puma Biotechnology*, ECF No. 614 (Minute Order) at 5 (granting plaintiffs' motion *in limine* to exclude evidence of "post-Class Period events, results,

or outcomes"); *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2018 WL 2010621, at *1 (N.D. Cal. April 30, 2018) (excluding evidence about iPhone features post-dating the damages period). The Court should thus exclude the opinions in ¶¶ 95 and 96 of Dr. Gompers' Report.

## **CONCLUSION**

For all these reasons, Plaintiff respectfully requests that the Court grant its motion to exclude Dr. Gompers's expert opinions described above.

Dated: April 7, 2025

Respectfully submitted,

/s/ James E. Cecchi

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

**SEEGER WEISS LLP**
Christopher A. Seeger
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656

*Co-Liaison Counsel for Lead Plaintiff and the Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Matthew L. Mustokoff (admitted *pro hac vice*)
Jamie M. McCall (admitted *pro hac vice*)
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Lead Plaintiff and the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (admitted *pro hac vice*)
Adam H. Wierzbowski (admitted *pro hac vice*)
Robert F. Kravetz (admitted *pro hac vice*)
Aasiya Mirza Glover (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1448

*Additional Counsel for the Class*