**CARELLA, BYRNE, CECCHI,**
  **BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

**SEEGER WEISS LLP**
Christopher A. Seeger
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656

*Co-Liaison Counsel for Lead Plaintiff
and the Class*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Matthew L. Mustokoff
Jamie M. McCall
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Lead Plaintiff and the
Class*

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
Salvatore J. Graziano
Adam H. Wierzbowski
Robert F. Kravetz
Aasiya Mirza Glover
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1448

*Additional Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CELGENE CORPORATION SECURITIES LITIGATION | Case No. 2:18-cv-04772 (MEF) (JBC) <br><br> CLASS ACTION <br><br> MOTION DAY: July 7, 2025 |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO
## <u>EXCLUDE THE TESTIMONY OF DR. CHRIS STOMBERG</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

LEGAL STANDARD ..........................................................................................6

ARGUMENT .......................................................................................................6

    I.    Dr. Stomberg is Qualified to Testify About Pharmaceutical Budgeting and Forecasting ......................................................6

    II.    Dr. Stomberg's Opinions Regarding Celgene's Budgeting Process Are Admissible ....................................................12

    III.    Beyond Their Meritless Qualifications Challenge, Defendants Do Not Challenge the Bulk of Dr. Stomberg's Opinions ..................21

CONCLUSION ..................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page(s)**

*Acosta v. WPN Corp.*,
  2018 WL 3707418 (W.D. Pa. Aug. 3, 2018) ...................................................... 11

*Aloe Coal Co. v. Clark Equip. Co.*,
  816 F.2d 110 (3d Cir. 1987) ........................................................................ 9

*Apotex, Inc. v. Cephalon*, *Inc.*,
  321 F.R.D. 220 (E.D. Pa. 2017) .................................................................. 16

*Berckeley Inv. Grp. Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ................................................................. 15, 22

*Calhoun v. Yamaha Motor Corp.*, *U.S.A.*,
  350 F.3d 316 (3d Cir. 2003) ........................................................................ 8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  286 F.R.D. 266 (W.D. Pa. 2012) ........................................................ 14, 20, 22

*In re Celgene Corp. Sec. Litig.*,
  2019 WL 6909463 (D.N.J. Dec. 19, 2019) ...................................................... 14

*Christophetti v. Bally's Park Place, Inc.*,
  2021 WL 3879074 (D.N.J. Aug. 30, 2021) ...................................................... 12

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*,
  2015 WL 5097883 (D.N.J. Aug. 31, 2015) ........................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................. 12

*Deutsch v. Novartis Pharm. Corp.*,
  768 F. Supp. 2d 420 (E.D.N.Y. 2011) ............................................................. 9

*Dzielak v. Whirlpool Corp.*,
  2017 WL 1034197 (D.N.J. Mar. 17, 2017) ...................................................... 18

*Floorgraphics, Inc. v. News Am. Mktg. In-Store Svcs, Inc.*,
  546 F. Supp. 2d 155 (D.N.J. 2008) ........................................................... 8, 12

*In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*,
   751 F.3d 150 (3d Cir. 2014) ...................................................................21

*Heller v. Shaw Indus., Inc.*,
   167 F.3d 146 (3d Cir. 1999) ...................................................................20

*Hickey v. Merritt-Scully*,
   2022 WL 883851 (M.D. Pa. Mar. 24, 2022) ........................................21

*K.G. v. Owl City*,
   2023 WL 3735891 (D.N.J. May 31, 2023).............................................11

*Kannankeril v. Terminex Int'l, Inc.*,
   128 F.3d 802 (3d Cir. 1997) ..............................................................7, 11

*Krys v. Aaron*,
   112 F. Supp. 3d 181 (D.N.J. 2015)......................................................2, 7

*Maldonado v. Walmart Store No. 2141*,
   2011 WL 1790840 (E.D. Pa. May 10, 2011)..........................................21

*Mastripolito v. Jefferson Health-New Jersey*,
   583 F. Supp. 3d 622 (D.N.J. 2022)........................................................15

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   2015 WL 5767415 (E.D. Pa. July 29, 2015) ...........................................7

*In re Paoli R.R. Yard PCB Litig. (In Re Paoli I)*,
   35 F.3d 717 (3d Cir. 1994) ......................................................................6

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d Cir. 2008) ..........................................................6, 7, 8

*ProtoComm Corp. v. Novell Advanced Svs, Inc.*,
   171 F. Supp. 2d 473 (E.D. Pa. 2001).....................................................15

*Resco Prods. Inc. v. Bosai Minerals Grp.*,
   2015 WL 5521768 (W.D. Pa. Sept. 18, 2015)........................................19

*S.E.C. v. Ambassador Advisors, LLC*,
   576 F. Supp. 3d 250 (E.D. Pa. 2021)......................................................20

*Shire Viropharma Inc. v. CSL Behring LLC*,
    2021 WL 1227097 (D. Del. Mar. 31, 2021) .......................................................22

*Smith v. CitiMortgage, Inc.*,
    702 F. Supp. 3d 247 (D.N.J. 2023) .....................................................................20

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D.N.J. 2013) .....................................................................22

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) ...................................................................................9

*VEC, Inc. v. Joyce Electrical, Inc.*,
    2024 WL 4445968 (M.D. Pa. Oct. 8, 2024) ...................................6, 15, 20, 22

*Waldorf v. Shuta*,
    142 F.3d 601 (3d Cir. 1998) ...................................................................................7

### STATUTES AND RULES

Fed. R. Evid. 702 .........................................................................................................6

## INTRODUCTION

Defendants' Motion[1] to exclude the testimony of Dr. Christopher Stomberg, a highly-credentialed economist with over twenty-five years of professional experience, distorts his extensive qualifications, misconstrues his reports and testimony, and provides no basis to exclude any of his reliable opinions.

**First**, Defendants' broad challenge to Dr. Stomberg's qualifications is meritless. Dr. Stomberg has devoted much of his career to econometric forecasting, with a focus on applications in the pharmaceutical industry, and his experience is directly relevant to the questions he addresses in this matter. As a partner at two leading consulting practices, Dr. Stomberg has provided a variety of services for clients in the pharmaceutical industry relating to the budgeting process, including constructing and evaluating sales forecasts; performing quantitative analyses of pharmaceutical sales and marketing forecasts; evaluating managed care contracts;

---

[1] Lead Plaintiff is AMF Tjänstepension AB ("AMF" or "Lead Plaintiff"). "PX" refers to the exhibits attached to the Omnibus Declarations of James E. Cecchi filed on April 7, 2025 (ECF 392) and on May 19, 2025. "All references to "¶," "§," or "Report" are to ECF 395-13, the Expert Report of Dr. Stomberg, dated May 12, 2022, "Reply" are to the Reply Expert Report of Dr. Stomberg, dated October 14, 2022 (PX 53), "Tr." are to PX 49, the transcript of the deposition of Dr. Stomberg, dated November 3, 2022, and "R.Tr." are to PX 26, the transcript of the deposition of Dr. Brian Reisetter, dated September 23, 2022. All references to the "Motion" or the "Mot." are to Defendants' Mem. of Law in support of their Motion to Exclude the Testimony of Lead Plaintiff's Expert Witnesses Dr. Simon Helfgott and Dr. Chris Stomberg (ECF 395-1). Unless otherwise stated, all internal citations are omitted and all emphasis is added.

and conducting profitability and competitive market assessments. Dr. Stomberg has offered expert testimony for pharmaceutical companies regarding lost profits and damages, efforts that inherently involve creating or evaluating forecast estimates. Dr. Stomberg has also served as a consulting expert or expert witness in numerous cases involving forecasting methodologies, and he has published articles and given presentations on topics implicating budgeting and forecasting principles. Dr. Stomberg's "knowledge and professional experience" in applied economics and econometrics, including his experience with forecasting, "plainly exceeds that of the average layman." *Krys v. Aaron*, 112 F. Supp. 3d 181, 194-95 (D.N.J. 2015). At best, Defendants' challenge to Dr. Stomberg's qualifications provides a basis for cross-examination, not exclusion.

***Second***, Dr. Stomberg offers reliable opinions regarding the creation of Celgene's 2017 Otezla Budget. Dr. Stomberg reliably bases his opinions on his substantial experience and his careful review of Celgene documents, including the actual performance data available to Defendants and key assumptions underpinning the 2017 Budget. His reference to a statistical regression model (the "Bass" model of product adoption) to summarize Celgene's data and demonstrate Otezla's product stagnation is consistent with the factual record and supported by his experience and the literature.

***Third***, other than offering a futile challenge to Dr. Stomberg's overall

2

qualifications, Defendants do not contest—and have otherwise waived any challenges to—the remainder of Dr. Stomberg's Report, including his reliable opinions regarding standard industry budget and forecasting practices, and his assessment of Otezla's performance vis-à-vis its forecast in 2017.

Lead Plaintiff therefore respectfully requests that the Court deny the Motion.

## BACKGROUND

Dr. Christopher Stomberg has a Ph.D in Economics from the University of California, San Diego. ¶1. Dr. Stomberg's professional focus is in healthcare economics, econometrics, and econometric forecasting. ¶¶2-3. During his twenty-five years in the field, Dr. Stomberg has concentrated on "the budgeting and forecasting processes relating to pharmaceuticals and other products," and forecast modeling, which is a "near-universal practice" in the industries he studies. ¶2; *see also* App. A at 1 (citing experience in "[m]odeling, econometrics, forecasting, data-science, statistics, and sampling"); Tr. at 128:3-13 (stating his background serves as the foundation for his opinions in this case).

Dr. Stomberg's work for pharmaceutical clients has included creating inputs for pharmaceutical budgets, constructing and evaluating budgets and net sales forecasts, and providing quantitative analyses of sales forecasts and forecasting data. *Id.* at 44:21-45:23; 102:4-17. Dr. Stomberg has also worked on issues involving pharmaceutical pricing and reimbursement, branded and generic pharmaceuticals,

3

competition in the pharmaceutical and medical device industries, health care economics, and pharmaceutical marketing. App. A at 1.

In addition to his consulting work, Dr. Stomberg has served as an expert witness on multiple occasions, including in cases for clients in the pharmaceutical industry. Dr. Stomberg has provided damages assessments for pharmaceutical clients in lost profits cases, in which forecasting is an "intrinsic part of the work." Tr. at 46:15-47:24 (noting it is "inherently a forecast exercise"). Dr. Stomberg has also authored several publications and provided multiple presentations on topics involving pharmaceutical forecasting. App. A at 5-8; Tr. at 72:18-9; 73:24-75:6; 75:15-76:20; 80:12-81:5; 86:15-18.

In this case, Lead Plaintiff engaged Dr. Stomberg "to provide a review of budget, performance assessment, and forecasting practices within the pharmaceutical industry; to analyze whether certain of Celgene's budget, performance assessment, and forecasting practices were reliable and consistent with industry practices; and to assess objective Otezla market performance metrics in 2017, particularly in and around the periods surrounding April 27, 2017 and July 27, 2017." ¶1.2.

In connection with his assignment, Dr. Stomberg organizes his Report into seven sections:

In <u>Section 1</u> (¶¶1-19), Dr. Stomberg identifies his qualifications, his

4

assignment, the materials he considered, and a summary of his opinions.

In <u>Section 2</u> (¶¶20-30), Dr. Stomberg provides a background of the parties, psoriasis and psoriatic arthritis autoimmune disorders, and Otezla.

In <u>Section 3</u> (¶¶31-58), Dr. Stomberg describes the general process of creating a budget and forecast, including the different phases of product forecasting.

In <u>Section 4</u> (¶¶59-113), Dr. Stomberg examines internal Celgene documents, explains how Celgene prepared its 2017 budget for Otezla, and analyzes how, consistent with internal documents, Celgene's budget assumptions were flawed and why its forecast was not supported by actual data.

In <u>Section 5</u> (¶¶114-65), Dr. Stomberg assesses Otezla's performance in the first quarter of 2017, with a focus on specific performance metrics such as inventory, market share, market access, and the overall psoriasis market.

In <u>Section 6</u> (¶¶166-213), Dr. Stomberg analyzes Otezla's performance in the second quarter of 2017, including its market share and key performance metrics.

Finally, in <u>Section 7</u> (¶¶214-220), Dr. Stomberg tracks Otezla's performance through October 26, 2017, the date of corrective disclosure.

Defendants offer a broad challenge to Dr. Stomberg's qualifications to offer any opinions regarding pharmaceutical budgeting and forecasting, as well as a specific challenge to the reliability of Dr. Stomberg's opinions regarding Celgene's 2017 budget, which is set forth in Section 4 of his Report. As set forth below, Dr.

Stomberg is highly-qualified, and he provides reliable opinions regarding industry practices and key case documents "to help the trier of fact navigate complex industry-specific matters." *VEC, Inc. v. Joyce Electrical, Inc.*, 2024 WL 4445968, at *4-5 (M.D. Pa. Oct. 8, 2024).

## LEGAL STANDARD

In addressing expert challenges, the Court considers whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, i.e., it must "fit" the facts of the case. *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *4 (D.N.J. Aug. 31, 2015) (citing cases). The Third Circuit has repeatedly espoused a "liberal policy of admissibility" and a "strong preference for admitting any evidence that may assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). "The rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (adv. comm. notes).

## ARGUMENT

### I.    Dr. Stomberg is Qualified to Testify About Pharmaceutical Budgeting and Forecasting

A witness may be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Third Circuit has interpreted the qualifications requirement "liberally" and eschews "overly rigorous requirements of expertise." *In re Paoli R.R. Yard PCB Litig. (In Re Paoli I)*, 35 F.3d 717, 741 (3d

Cir. 1994). A "broad range of knowledge, skills, and training qualify an expert," so long as the expert possesses "skill or knowledge greater than the average layman." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). If an expert meets the "liberal minimum qualifications, then the level of [an] expert's expertise goes to credibility and weight, not admissibility." *Kannankeril v. Terminex Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997). It is "an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244.

Here, Dr. Stomberg's "knowledge and professional experience . . . plainly exceeds that of the average layman." *Krys*, 112 F. Supp. 3d at 194-95. Dr. Stomberg is a Ph.D economist with a concentration in econometrics—the use of "economic data and statistics to provide predictions . . . out of sample observations." Tr. at 36:11-16; App. A at 1; *see also In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415, at *4 (E.D. Pa. July 29, 2015) (similarly defining "econometrics").

Dr. Stomberg currently serves as a Managing Director at one of the leading economic consulting firms in the industry, NERA. ¶1. He has devoted most of his 25-year career in economic consulting to matters in the pharmaceutical industry, and he regularly works on forecasting issues as a consultant and as an expert for clients

in the pharmaceutical industry. *See, e.g.,* ¶2; App. A at 1 (citing experience in "[m]odeling, econometrics, forecasting, data-science, statistics, and sampling"); Tr. at 44:21-45:23; 46:15-47:24; 102:4-17; 128:3-13. He has also published articles about pharmaceutical forecasting issues and has given presentations on issues implicating pharmaceutical forecasting. *See, e.g.,* App. A at 5-8; Tr. at 72:18-9; 73:24-75:6; 75:15-76:20; 80:12-81:5; 86:15-18.

As Dr. Stomberg explained, econometric forecasting is "a part of almost all of th[e] cases he has worked on," and a "near-universal practice in many of the industries" that he studies, as it underlies much of his "professional experience" for over two decades. Tr. at 35:24-36:10; 37:3-23. Given this experience, Dr. Stomberg readily possesses the requisite specialized knowledge to offer the opinions set forth in his Report. *See, e.g.*, *Pineda*, 520 F.3d at 243 (general expertise in glass qualified expert to testify as to warnings regarding a specific glass type); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Svcs, Inc.*, 546 F. Supp. 2d 155, 167 (D.N.J. 2008) (experience in "labor economics and econometrics" allowed expert to become "well versed" in general "audit and survey methodology").[2]

---

[2] Defendants' cited cases (Mot. at 18-19) are inapposite. In *Calhoun v. Yamaha Motor Corp.*, *U.S.A.*, the court *qualified* the witness as an expert in "human factors engineering" and allowed him to testify that, due to the similarities between a jet ski throttle and a bicycle brake, a child in a stress situation would naturally squeeze the throttle in an attempt to stop the jet ski. 350 F.3d 316, 322 (3d Cir. 2003). But the court precluded the expert from providing an *additional opinion* where he did not

Defendants have no recourse other than to distort Dr. Stomberg's experience. Mot. at 17-18. For example, Defendants claim that Dr. Stomberg has never been hired to "prepare or offer an opinion on a budget." *Id.* at 17. But Dr. Stomberg testified that he has prepared "important quantitative" inputs for pharmaceutical budgets, "constructed and evaluated" budgets in multiple cases, and served as a consultant to "a quantitative forecasting department" that has "constructed a pharmaceutical sales forecast." Tr. at 99:2-101:7. In fact, Dr. Stomberg testified about his specific experience in "statistically projecting 30-day equivalent" prescriptions, which is a "standard methodological consideration in the pharmaceutical industry" that was central in one of the forecasting techniques used by Celgene. *See* Tr. at 143:2-146:14 (citing work projecting 30-day equivalent

---

point to any *scientific* "literature confirming this theory, nor demonstrable tests," rendering it "speculative and unreliable." *Id.*

In *In re TMI Litig.*, 193 F.3d 613, 680-81 (3d Cir. 1999), the Court upheld the exclusion of a biologist who was "neither a medical doctor nor a health physicist," and who was thus unqualified to offer an opinion as to radiation-induced *medical* conditions. Likewise, in *Deutsch v. Novartis Pharm. Corp.*, the court found that an expert who was the founder of a regulatory and medical consulting firm lacked any professional experience to testify about "ethical standards in the pharmaceutical industry." 768 F. Supp. 2d 420, 468-69 (E.D.N.Y. 2011) The "mismatch" between the experts' qualifications and opinions in *TMI* and *Deutsch* is unlike here, where Dr. Stomberg has spent his career applying econometrics and forecasting techniques, and is presenting expert opinion based on his experience.

Finally, *Aloe Coal Co. v. Clark Equip. Co.*, presents the straightforward holding that a machinery salesman who "never operated construction machinery," "had no experience in designing construction machinery," and was only "a salesman," was unqualified to testify about a design defect. 816 F.2d 110, 114 (3d Cir. 1987).

prescriptions); *see also* ECF 395-4 at 15 of 65.

Defendants also downplay Dr. Stomberg's experience because he purportedly "has never prepared a comprehensive sales forecast or budget." Mot. at 17. But as Defendants' expert, Dr. Brian Reisetter, acknowledged, no one person develops a budget or forecast for a product like Otezla. *See* R.Tr. at 25:25-26:8; 26:13 (noting it is a "collaborative effort" to "build and finalize the model"). Dr. Stomberg, who has worked directly for pharmaceutical clients to produce a variety of budget and forecasting inputs, and to construct pharmaceutical forecasts to calculate damages as an expert, has the experience to opine on budget and forecasting issues in this case.[3]

Finally, Defendants seek to diminish Dr. Stomberg's work in lost profits cases. Mot. at 17. But their cursory argument ignores that Dr. Stomberg has provided specific forecast estimates in the context of lost profits opinions in at least three

---

[3] Dr. Stomberg's experience exceeds that of Dr. Reisetter, who described himself as a "marketing consultant," R.Tr. at 14:10-14, who is "typically brought in as a pricing or marketing expert," *id.* at 57:24-58, and not for budgeting or forecasting purposes. Dr. Reisetter acknowledged that he has not been part of any quantitative analysis group constructing forecasts of the type used to forecast Otezla sales. *Id.* at 125:126:16. While he identified two prior engagements "that would have involved some sort of analysis or commenting on sales or sales forecasting," *id.* at 55:11-19, in none of those cases did Dr. Reisetter offer an opinion regarding whether a particular forecasting methodology, assumption, or input was appropriate. Nor did he recall opining on the accuracy of forecasted unit sales volumes or forecasted net revenues. *Id.* at 56:14-57:23.

recent cases. *See* Tr. at 66:3-18, 68:7-23; 69:11-24, 70:6-8; 72:2-4; App. A at 2-3 (referencing lost profits cases which "inherently" involve forecasting). And contrary to Defendants' claim that Dr. Stomberg did not "comment[] specifically about the [econometric] modeling and the techniques that were used by the company," Mot. at 17, Dr. Stomberg testified that "[i]mplicit in all of" his lost profits opinions was "a review of the [forecasting] methodology that was used," and that he "likely" commented "specifically about the modeling and the techniques that were used by the company." Tr. at 53:19-55:4.

Defendants' "narrow" interpretation of Dr. Stomberg's qualifications is thus unavailing under the liberal standard of admissibility. *K.G. v. Owl City*, 2023 WL 3735891, at *4 (D.N.J. May 31, 2023). "The mere fact that [Dr. Stomberg] does not have the formal qualifications that [Celgene] *believes* are the most appropriate does not render him unqualified." *See Acosta v. WPN Corp.*, 2018 WL 3707418, at *5 (W.D. Pa. Aug. 3, 2018) (rejecting qualifications challenge to ERISA fiduciary standards expert who never served on a retirement committee). Whether another expert "might have done a better job is not the test." *Kannankeril*, 128 F.3d at 809.

Here, Dr. Stomberg answered questions regarding just his qualifications for *nearly three hours* at his deposition and *repeatedly* described his experience in pharmaceutical forecasting. Tr. at 1-126. Any dispute regarding Dr. Stomberg's level of expertise goes to the "credibility" and "weight of his testimony, not its

11

admissibility." *Christophetti v. Bally's Park Place, Inc.*, 2021 WL 3879074, at *5-6 (D.N.J. Aug. 30, 2021); *see also Floorgraphics*, 546 F. Supp. 2d at 166 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." ). Should Defendants maintain their unsubstantiated position that Dr. Stomberg is unqualified, they may cross-examine him at trial. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## II.    Dr. Stomberg's Opinions Regarding Celgene's Budgeting Process Are Admissible

Outside of their general qualifications challenge, Defendants specifically challenge only Section 4 of Dr. Stomberg's Report. In Section 4, Dr. Stomberg reviews internal Celgene documents to explain how the Company constructed its 2017 Budget (§§4.1-4.2), provides an overview of the PsO and PsA market (§4.3), explains the utility and results of Celgene market research (§4.4), identifies the status of Otezla's market share at the time Celgene set the Otezla budget (§4.5), illustrates Celgene's net revenue growth assumptions for Otezla (§4.6), and describes how Otezla's non-U.S. budget targets were not likely to offset budget shortfalls (§4.8).[4]

Based on his review and analysis of internal Celgene documents, Dr.

---

[4] Defendants did not challenge any specific paragraphs in Section 4.7. *See infra* §III.

Stomberg ultimately concludes that "Celgene did not follow reasonable industry practices in forming its 2017 Otezla Budget" because it "based the Otezla US budget on market share growth *assumptions* that ignored important contemporaneous evidence that those *assumptions* were highly unrealistic." ¶113. As he explains, internal data "communicated a different reality: Otezla was maturing, and its market share growth was rapidly decelerating as it faced strong competition," thus making the "2017 Otezla Budget was unreasonable and unreliable." *Id.*

Contemporaneous Celgene documents and testimony corroborate Dr. Stomberg's conclusion. For example, Defendant Curran acknowledged receiving a document entitled "US Presentation of 2017 Budget" that was prepared for an October 20, 2016 meeting and stated that Otezla's market share capture was continuing "at a slower pace." PTO ¶36 (*see* PX 50 (Curran Tr. at 27:2-27:19; 32:23-32:25; 34:3-34:25); *see also* PX 51 (Tessarolo Tr. at 27:15-22) (referencing Otezla market share in August 2016)). And an October 25, 2016 Celgene-commissioned report concluded that key indicators point to "market stasis for Otezla." ¶¶77, 82 (citing mid-2016 Celgene-commissioned report).

Defendants challenge Dr. Stomberg's opinions in Section 4 as "speculative and irrelevant to the issues before the jury." Mot. at 19. However, his opinions in Section 4 regarding the Otezla budget process are plainly relevant and based on his experience and review of the record.

One of the key facts that Lead Plaintiff will establish at trial is that Curran and other Celgene executives learned about Otezla's slowing growth while they were preparing the 2017 Otezla budget and approving managed care contracts that were not forecast to deliver *any* net revenue in 2017. ¶¶97, 198; *see also* PTO (ECF 363) ¶¶49, 55 (citing PX 52 (CELG-AMF_01178453), September 2016 email to Curran stating that "[f]ailing to deliver an inflection in market share would risk performing to our currently submitted 2017 budget"). The Otezla Budget was "predicated on substantial net revenue growth driven largely by market share growth in its undiscounted business," *i.e.*, outside the managed care contracts, ¶61. Thus, Dr. Stomberg's testimony about Otezla's key performance metrics as of late-2016—including whether Otezla's market share had reached maturity—will help the jury understand whether the 2017 Budget and public guidance were achievable from the outset, when senior Celgene executives warned Curran that they were not. *See In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *16, *20 (D.N.J. Dec. 19, 2019).

Further, given Dr. Stomberg's experience in pharmaceutical budget and forecasting practices, his explanation of internal company documents would "certainly prove helpful to the average juror who presumably lacks such experience in and knowledge about" such matters, "even if doing so does not require employing any particular methodology but simply a straightforward review of the corporation's data." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 271-72

(W.D. Pa. 2012); *VEC*, 2024 WL 4445968, at *5 ("the practical experience expert's evidence can fit the issues of the case by utilizing the available facts and his practical experience to help the trier of fact navigate complex industry-specific matters"); *ProtoComm Corp. v. Novell Advanced Svs, Inc*., 171 F. Supp. 2d 473, 480 (E.D. Pa. 2001) (expert may testify based on personal knowledge and experience, "as well as a seemingly copious review of a multitude of relevant business documents"). Expert testimony on standard industry practices, such as the creation of a budget forecast, may also "provide[] an important context which will aid the jury in determining whether [a party] had the requisite scienter." *Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006); *Mastripolito v. Jefferson Health-New Jersey*, 583 F. Supp. 3d 622, 627 (D.N.J. 2022) (permitting testimony on relevant industry standards to assess sufficiency of harassment investigation).

Defendants' arguments against admissibility are unpersuasive.

***First***, contrary to Defendants' arguments, Dr. Stomberg did not offer "ex-post hypotheticals regarding Celgene's sales forecasts based on his opinion regarding what market assumptions, factors, or 'signals' Celgene did or did not 'incorporate' into its Otezla forecasts and budgets." Mot. at 19-21. Section 4 of his Report tracks and explains the *actual* data that was available to Celgene and the *actual* assumptions that Celgene incorporated into Otezla's forecast—there is nothing "speculative" (Mot. at 19) about his review and reliance on them. *See, e.g.*, ¶¶63-64 & figs. 3-4

15

("Forecast Assumptions" and "Key Planning Assumptions"); Tr. at 133:15-18. *See*

*Apotex, Inc. v. Cephalon*, *Inc.*, 321 F.R.D. 220, 232-33 (E.D. Pa. 2017) (permitting

market share opinion based on internal data). "Whether Dr. [Stomberg] relied on the

best data in forming his opinions is a question for the jury." *Id.*

 **Second**, Defendants' argument that Dr. Stomberg's opinions are speculative

because he does not identify the "names of the forecasting methodologies that

Celgene used" in his report, Mot. at 20, is a red herring. As Dr. Stomberg explained,

his primary critique is "more fundamental" and is not focused on a particular

forecasting model: "the assumptions that Celgene fed into its models were flawed

and unreliable, rendering the 2017 US Budget and forecasts flawed and unreliable."

Reply ¶10.

 Here, the specific "technique Celgene used to generate the unit forecasts" is

immaterial, as the "validity of those forecasts depends fundamentally on the

*assumptions* that Celgene fed to those models." ¶11. Otezla's "Key Planning

Assumptions" included both Market Growth and Market Share:

16

## Key Planning Assumptions

| US Assumptions | | FY14 | FY15 | FY16 | FY17 | FY18 | FY19 |
|---|---|---|---|---|---|---|---|
| PSA | | | | | | | |
| | Market Growth | 9.0% | 15.0% | 10.0% | 8.0% | 6.0% | 4.0% |
| | Market Share | 2.1% | 5.9% | 7.0% | 9.1% | 10.7% | 11.3% |
| PSO | | | | | | | |
| | Market Growth | 7.0% | 13.0% | 17.0% | 13.0% | 10.0% | 6.0% |
| | Market Share | 0.8% | 7.6% | 12.6% | 17.2% | 21.0% | 22.9% |
| Gross Price Plan | | | 14.0% | 17.6% | 14.7% | 12.5% | 14.4% |
| Gross to Net | | 18.5% | 18.5% | 24.2% | 32.6% | | |
| New Products | | | | | | | |
| | OTEZLA QD | | | | | Q3 | |
| | OZ - MS | | | | | Q4 | |
| | OZ - UC | | | | | | Q4 |
| | GED-301 | | | | | | Q3 |

*See* ECF 395-13, Fig. 4; PX 54 (CELG-AMF _04600372 at -375); Reply ¶¶8, 18.

Dr. Stomberg's opinions thus bear directly on information incorporated by Celgene into the Otezla budgeting process. He will help the jury understand the significant discrepancy between the "decelerating market share growth trend" Otezla was experiencing and the forecasted market share assumptions reflected across Celgene's models. Reply ¶12 (market deceleration placed "the forecasted unit sales growth [] out of reach"); ¶13 (budget opinions focus on "the reasonableness of Celgene's market *assumptions*") (emphasis in original). As even Dr. Reisetter acknowledged, forecasts are reliant on the assumptions fed into the models. R.Tr. at

17

126:17-127:11.[5] If the assumptions underlying the models are invalid, so too are the outputs from the models. Reply ¶10 ("the assumptions that Celgene fed into its models were flawed and unreliable, rendering the 2017 US Otezla Budget and forecasts flawed and unreliable").

*Finally*, Defendants move to exclude any testimony about the "Bass diffusion model," Mot. at 22-25, implicates a "classic battle of the experts over disputed facts, to be settled by the finder of fact; it does not affect admissibility." *Dzielak v. Whirlpool Corp.*, 2017 WL 1034197, at *26 (D.N.J. Mar. 17, 2017).

Defendants claim that the Bass model may not be used to forecast pharmaceutical sales or market share. Mot. at 22-24. But Dr. Stomberg's Report describes how the product adoption curve is used within the pharmaceutical industry for modeling and forecasting purposes. He analyzed Otezla's market deceleration in the context of the product adoption cycle of a pharmaceutical product—initial adoption, to rapid market response, to slowing adoption as a product reaches

---

[5] Defendants fail to support their claim that they produced specific information regarding their forecasting models that Dr. Stomberg "chose not to consider." Mot. at 20. Dr. Reisetter could not explain any details about those models other than referring vaguely to Doug Bressette's deposition testimony, R.Tr. at 127:13-129:5. Bressette, in turn, could not identify any specific document, either. PX 45 (Bressette Tr. 114:1-13). Dr. Reisetter does not identify any specific Excel forecast model in his Report. In fact, Dr. Reisetter offers no further insight into Celgene's statistical modeling process other than citing the same materials that Dr. Stomberg explicitly relied on in forming his opinions

maturity. ¶85; *see also* ¶57 (describing the "transition from the middle period of rapid product adoption to the slower growth of maturity"). As Dr. Stomberg explains, product adoption typically follows an S-shaped curve and is referred to as the "Bass diffusion model or Gompertz curve." ¶96. The Bass regression model[6] may be used to estimate the "peak market share" predicted by the model, which Dr. Stomberg demonstrates in Figures 13 and 14 of his Report. *Id.* Testimony about product adoption will help the jury understand the import of Otezla's market deceleration, the assumptions underlying its budget model, and other contemporaneous Celgene documents.

In contrast, Defendants rely almost entirely on the competing opinions of their own expert, Dr. Reisetter, Mot. at 23, who relies on a "limited and selective choice of literature" and ignores that "a substantial body of literature within statistics, economics, and marketing supports the use of these models in the context of pharmaceutical forecasting." Reply ¶¶78, 93-96. In fact, during his deposition, Dr. Stomberg read a passage from an additional source *shown by defense counsel* stating that the "Bass model was not designed to forecast pharmaceuticals—but turned out to do so rather well," and that the Bass model has been applied to "pharmaceutical

---

[6] Courts have widely accepted the use of regression modeling methodologies by experts. *See, e.g., Resco Prods. Inc. v. Bosai Minerals Grp.*, 2015 WL 5521768, at *4 (W.D. Pa. Sept. 18, 2015) (describing general purpose of regression analysis).

19

sales most notably by Frank Bass himself." Tr. at 253:2-5, 253:18-254:10. Contrary to Defendants' suggestion, Mot. at 23, Dr. Stomberg has used the Bass model "professionally in this context in the past." Tr. at 229:9-13 (citing literature that "makes clear that it is used and appropriate"); *see also* Tr. at 221:24-223:16; 228:3-24 ("I'm relying on my experiences as I've described. I've actually done this type of modeling in the past.").[7]

Defendants' fact intensive challenge as to Dr. Stomberg's use of the Bass model goes to the weight of his testimony and can be explored through cross-examination. Ultimately, the jury, not the Court, must resolve the conflicting opinions between Drs. Stomberg and Reisetter. *Hickey v. Merritt-Scully*, 2022 WL 883851, at *11 (M.D. Pa. Mar. 24, 2022). As this Court has explained, "[c]hoosing which expert to credit and grappling with their divergent views is the jury's job here." *Smith v. CitiMortgage, Inc.*, 702 F. Supp. 3d 247, 260 & n.17 (D.N.J. 2023) ("It is not for the Court to choose sides . . . .").[8]

---

[7] Given his personal experience, and the corresponding literature he references, Dr. Stomberg's opinion applying the Bass model is certainly not *ipse dixit*, Mot. at 23. *See Marvell Tech*, 286 F.R.D. at 271-72 ("Where the expert's testimony is based upon personal knowledge and experience, the methodology used will be applying that experience to the facts of the case."); *VEC*, 2024 WL 4445968, at *4-5 (rejecting argument that the opinion of an expert with practical experience was *ipse dixit*).

[8] The cases cited by Defendants (Mot. at 25) are inapplicable. In *S.E.C. v. Ambassador Advisors, LLC*, the expert attempted to testify about a "theoretical policy justification" and did not "conduct any economic analysis to support his

20

## III. Beyond Their Meritless Qualifications Challenge, Defendants Do Not Challenge the Bulk of Dr. Stomberg's Opinions

Other than their meritless challenge regarding Dr. Stomberg's qualifications, and their specific challenge to "Dr. Stomberg's opinions about what Celgene should have considered when creating its 2017 forecast," Mot. at 19-25, Defendants do not challenge the remainder of his opinions.[9] Defendants have thus waived any challenge to these sections of his report. *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 751 F.3d 150, 157 (3d Cir. 2014) (stating that courts "consistently" hold "that '[a]n issue is waived unless a party raises it in

---

opinions." 576 F. Supp. 3d 250, 261 (E.D. Pa. 2021). In *Maldonado v. Walmart Store No. 2141*, the court found that the expert's testimony was "based on nothing more than her own intuition and speculation" because she "did not review any of the facts or data in this case." 2011 WL 1790840, at *12 (E.D. Pa. May 10, 2011). It is unclear why Defendants cite page 153 of *Heller v. Shaw Indus., Inc.*, 167 F.3d 146 (3d Cir. 1999); regardless, the type of opinion excluded in that case—that a scientific expert failed to show a temporal relationship between the installation of carpeting and the plaintiff's medical issues, *id.* at 164-65—has no application here.

[9] The unchallenged opinions portions of the Report include Section 2 ("Background") (¶¶20-30); Section 3 ("The General Process of Creating a Budget and Forecast") (¶¶31-58); Section 4.7 ("Celgene Projections Showed That Managed Care Contracts Were Necessary to Grow Market Share, But Those Contracts Were Not Forecasted to Grow Net Revenue in 2017") (¶¶101-110); Section 5 ("Otezla's First Quarter 2017 Results Underperformed Relative to its Unreliable Budget, Demonstrating Poor Performance and Rendering Sales Projections Unattainable") (¶¶114-165); Section 6 ("Celgene's Key Performance Metrics Continued to Underperform in Second Quarter 2017") (¶¶166-213); and Section 7 ("Otezla Continued to Underperform Through October 26, 2017") (¶¶214-220). Defendants do not identify any sections of Dr. Stomberg's Reply Report, either (or even include it as an exhibit).

its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court."); *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 543 (D.N.J. 2013) ("It is usually improper for a moving party to shift gears and introduce new legal arguments in the reply brief.").[10]

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court deny Defendants' Motion.

---

[10] Even if Defendants had preserved a challenge to Sections 2, 3, 4.7, 5, 6, and 7 of Dr. Stomberg's Report, or to any sections of the Reply Report, it would be unsuccessful. Dr. Stomberg's background testimony about general industry practices is clearly admissible. *See, e.g.*, *Berckeley*, 455 F.3d at 218 (former SEC counsel qualified to offer background testimony on "offshore securities transactions"). Further, an expert may "[c]ertainly" discuss what internal documents "reflect" and how such circumstances could have impacted decisions made by a party. *Shire Viropharma Inc. v. CSL Behring LLC*, 2021 WL 1227097, at *5 (D. Del. Mar. 31, 2021). As explained *supra*, Dr. Stomberg's review of internal company documents to explain the status of Otezla's performance against the forecast, as well as to describe the underlying forecast assumptions through October 2017 may "certainly prove helpful to the average juror who presumably lacks such experience in and knowledge about" such matters, "even if doing so does not require employing any particular methodology but simply a straightforward review of the corporation's data." *Marvell Tech.* 286 F.R.D. at 271-72; *VEC*, 2024 WL 4445968, at *3-4 (expert's practical experience permitted him to "extensively analyze[d]" record documents to reach his conclusion). There is thus no basis to exclude these opinions that Defendants did not challenge.

Dated: May 19, 2025

*/s/ James E. Cecchi*
**CARELLA, BYRNE, CECCHI,
    BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

**SEEGER WEISS LLP**
Christopher A. Seeger
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656

*Co-Liaison Counsel for Lead Plaintiff
and the Class*

Respectfully submitted,

**KESSLER TOPAZ MELTZER &
CHECK, LLP**
Matthew L. Mustokoff (admitted *pro
hac vice*)
Jamie M. McCall (admitted *pro hac
vice*)
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Lead Plaintiff and the
Class*

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Salvatore J. Graziano (admitted *pro hac
vice*)
Adam H. Wierzbowski (admitted *pro
hac vice*)
Robert F. Kravetz (admitted *pro hac
vice*)
Aasiya Mirza Glover (admitted *pro hac
vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1448

*Additional Counsel for the Class*