**GIBBONS P.C.**
Lawrence S. Lustberg
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
Email: llustberg@gibbonslaw.com

*Counsel for Defendants*
[Additional Counsel for Defendants Appear on Signature Page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE CELGENE CORPORATION INC. SECURITIES LITIGATION | Civil Action No. 18-cv-04772 (MEF) (JBC)<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE SPECIFIC OPINIONS AND TESTIMONY OF DR. PAUL GOMPERS

# TABLE OF CONTENTS


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. Prof. Gompers Properly Relied on an Assumption Provided by Counsel That the Adjusted 2020 I&I Guidance and Implied 2020 Otezla Projections Are Not at Issue .......... 3

A. Prof. Gompers's Reliance on the Assumption Provided by Counsel Is Grounded in Sound Methodology and Reasoning .......... 4

B. Prof. Gompers's Testimony Concerning the 2020 Otezla Projections Will Assist the Jury's Consideration of Loss Causation and Damages .......... 7

II. Prof. Gompers's Opinions Are Grounded in Economic Principles and Do Not Purport to Set Forth Any Legal Standards .......... 9

A. Prof. Gompers Does Not Opine that Plaintiff Must Identify a Hypothetical "But-For" Disclosure to Establish the Legal Element of Loss Causation .......... 9

B. Prof. Gompers Properly Addresses the Economic Relevance of Any Mismatch Between the Alleged Misstatements and Corrective Disclosures .......... 13

III. Prof. Gompers's Use of the Phrase "Known to the Market" to Characterize Public Information Is a Common Term of Art, Not an Improper Opinion About State of Mind .......... 15

IV. Prof. Gompers's Opinions on Materialization of Known Risks Address the Proper Economic Methodology for Disaggregating Damages .......... 17

V. Prof. Gompers's Opinions Regarding the Potential Compounding Effect of Prior Negative News Are Grounded in Analyst Commentary .......... 18

VI. Prof. Gompers's References to Post-Class Period Events Are Used to Rebut Dr. Tabak's Damages Methodology, Not to Opine on Falsity or Scienter .......... 22

CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
623 F. Supp. 3d 470 (E.D. Pa. 2022) ........ 17

*Apotex, Inc. v. Cephalon, Inc.*,
321 F.R.D. 220 (E.D. Pa. 2017) ........ 9

*Arlanxeo Canada, Inc. v. Kaydon Ring & Seal, Inc.*,
No. 21-cv-1843, 2025 WL 964258 (M.D. Pa. Mar. 31, 2025) ........ 22

*Berckeley Inv. Group, Ltd. v. Colkitt*,
455 F.3d 195 (3d Cir. 2006) ........ 10

*Bricklayers & Trowel Trades Int' Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ........ 8, 14

*Brill v. Marandola*,
540 F. Supp. 2d 563 (E.D. Pa. 2008) ........ 5, 7

*Complaint of Borghese Lane, LLC*,
No. 18-cv-533, 2023 WL 3114851 (W.D. Pa. Apr. 27, 2023) ........ 22

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) ........ 11, 20

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........ 2, 3, 8

*Dominguez on Behalf of Himself v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018) ........ 7

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ........ *passim*

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
594 U.S. 113 (2021) ........ 15

*In re Apple Inc. Sec. Litig*,
No. 19-cv-2033, 2023 WL 4556765 (N.D. Cal. July 17, 2023) ........ 11, 12, 20

*In re DVI, Inc. Sec. Litig.*,
No. 03-cv-5336, 2013 WL 56083 (E.D. Pa. Jan. 4, 2013)........................................ 17

*In re Novatel Wireless Sec. Litig.*,
846 F. Supp. 2d 1104 (S.D. Cal. 2012) ..................................................................... 12

*In re Under Armour Sec. Litig.*,
730 F. Supp. 3d 172 (D. Md. 2024) ........................................................................... 12

*In re Williams Sec. Litig.*,
558 F.3d 1130 (10th Cir. 2009) .................................................................................. 8

*In re Xerox Corp. Sec. Litig.*,
No. 99-cv-2374, 2009 WL 8556135 (D. Conn. Apr. 2, 2009).................................. 14

*Intell. Ventures I LLC v. Xilinx, Inc.*,
No. 10-cv-1065, 2014 WL 1814384 (D. Del. Apr. 14, 2014).................................. 12

*Manpower, Inc. v. Ins. Co. of Pa.*,
732 F.3d 796 (7th Cir. 2013) ...................................................................................... 9

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
232 F. Supp. 3d 558 (S.D.N.Y. 2017)........................................................................ 17

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
No. 17-cv-241, 2019 WL 2482399 (N.D. Ga. Jun. 12, 2019)..................................... 7

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
332 F.R.D. 370 (N.D. Ga. 2019)................................................................................. 7

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ............................................................................ 23

*Pineda v. Ford Motor Co.*,
520 F.3d 237 (3d Cir. 2008)........................................................................................ 2

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013)....................................................................................... 24

*SEC. v. Daifotis*,
No. 11-cv-137, 2012 WL 2051193 (N.D. Cal. June 7, 2012) .................................. 17

*SEC v. Ripple Labs, Inc.*,
No. 20-cv-10832, 2023 WL 5670711 (S.D.N.Y. Mar. 6, 2023)................................ 13

*Tyson v. Superintendent Houtzdale SCI*,
976 F.3d 382 (3d Cir. 2020) .......... 10

*United States v. Martoma*,
993 F. Supp. 2d 452 (S.D.N.Y. 2014) .......... 21, 22

*United States v. Schiff*,
538 F. Supp. 2d 818 (D.N.J. 2008) .......... 17, 21

*United States v. Schiff*,
602 F.3d 152 (3d Cir. 2010) .......... 2, 8

*Weeks v. Angelone*,
528 U.S. 225 (2000) .......... 10

*Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*,
404 F. Supp. 3d 889 (D.N.J. 2019) .......... 5

**RULES**

Fed. R. Evid. 403 .......... 3

Fed. R. Evid. 702 .......... *passim*

**OTHER AUTHORITIES**

Bradford Cornell & R. Gregory Morgan, *Using Finance Theory to Measure Damages in Fraud on the Market Cases*, 37 UCLA L. Rev. 883, 891 (1990) .......... 15

## INTRODUCTION

Plaintiff's motion seeks the extraordinary remedy of striking the testimony of Defendants' loss causation and damages rebuttal expert, Professor Paul Gompers, yet it rests on a series of legal and factual misstatements that cannot withstand scrutiny. Prof. Gompers is a financial economist who has testified in numerous securities matters and whose qualifications are unchallenged. His opinions—grounded in a detailed analysis of financial data and analyst commentary, and clearly articulated economic principles—speak directly to the central questions of loss causation and damages that the jury must decide. It is beyond cavil that the Court's gatekeeping function is limited to excluding only that expert testimony which is not relevant, reliable, or helpful; it is not, as Plaintiff would have it, a substitute for the adversarial process of cross-examination and competing proof.

Far from exposing methodological flaws, Plaintiff merely disagrees with the conclusions Prof. Gompers draws when he (i) identifies the steps a financial economist would take to measure recoverable damages, (ii) critiques Plaintiff's own expert for failing to disaggregate confounding information, and (iii) demonstrates that the alleged stock price declines were driven, in whole or in part, by risks already known to—or knowable by—the market. The challenged testimony is classic rebuttal testimony: it explains precisely why Dr. Tabak's calculations of purported economic losses caused by the alleged misrepresentations are unreliable or overstated. And, contrary to Plaintiff's arguments, Prof. Gompers does not purport to opine on what constitutes

loss causation under the law or on the ultimate issue of whether Plaintiff establishes the element of loss causation. Instead, he sets forth his opinions on economic loss from the perspective of a financial economist, which are relevant to the jury's consideration of loss causation and purported damages.

Plaintiff asks the Court to exclude these opinions not because they are unsupported or speculative, but because they undermine Plaintiff's narrative. However, under the governing standards, Prof. Gompers's testimony is relevant, methodologically sound, and squarely within the province of expert economic analysis. Plaintiff's motion should therefore be denied in its entirety.

## LEGAL STANDARD

Under Federal Rule of Evidence 702, the trial court evaluates the admissibility of expert testimony based on three requirements: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)). While district courts play a "gatekeeping role" to ensure that expert testimony propounded in a case is both reliable and relevant, *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), this role is "not intended to serve as a replacement for the adversary system," Fed. R. Evid. 702 advisory committee's note. Rather, "the traditional and appropriate means of attacking" admissible evidence are "[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

Plaintiff does not challenge Prof. Gompers's qualifications as an expert in loss causation and damages. Nor can it. Prof. Gompers is a highly qualified expert in financial economics, and he has testified on these topics in many securities class actions. Instead, Plaintiff claims that six categories of Prof. Gompers's opinions are "unreliable and inadmissible" and should also be excluded under Federal Rule of Evidence 403. But Plaintiff's scattershot arguments are based on fundamental mischaracterizations of Prof. Gompers's opinions. Because Prof. Gompers's opinions are based on reliable methods and sufficiently tied to the facts of this case, they should not be excluded.

## ARGUMENT

### I. Prof. Gompers Properly Relied on an Assumption Provided By Counsel That the Adjusted 2020 I&I Guidance and Implied 2020 Otezla Projections Are Not at Issue.

Plaintiff argues that "Prof. Gompers may not opine on what is legally 'actionable' in this case" and contends that his "assumption that the 2020 guidance revision is 'not at issue in this case' squarely contradicts this Court's prior rulings and rests on a mischaracterization of Plaintiff's allegations." Dkt. No. 390 ("Pl.'s Br.") at 4.[1] This

[1] Plaintiff's theory is that Celgene's October 26, 2017 adjustment to its 2020 sales guidance for its Inflammation and Immunology portfolio (the "2020 I&I Guidance") implied an adjustment to its 2020 sales projections for Otezla (the "2020 Otezla Projections"). Plaintiff's position is that the implied adjustment to the 2020 Otezla Projections corrected the alleged misstatements, which concern Otezla's 2017 sales guidance.

argument misstates Prof. Gompers's anticipated testimony. Prof. Gompers does not, and will not, offer an *opinion* regarding whether Celgene's adjustment to the 2020 I&I Guidance is corrective of the alleged Otezla misstatements. Instead, Prof. Gompers made clear that he has *relied on an assumption* from counsel about what is actionable. *See* Pl.'s Ex. 28 ("Gompers Dep.") 11:2–6 ("Counsel instructed me—or told me that—that the announced revisions to 2020 guidance were not actionable.").[2]

Because experts like Prof. Gompers are permitted to rely on assumptions from counsel when formulating their opinions, and Prof. Gompers's critiques of Dr. Tabak's opinions on loss causation and damages will assist the trier of fact, Plaintiff's motion should be denied.

**A. Prof. Gompers's Reliance on the Assumption Provided by Counsel Is Grounded in Sound Methodology and Reasoning.**

Whether the adjustment to the 2020 I&I Guidance is corrective of the alleged misstatements is a factual question rooted in legal analysis. Prof. Gompers is an economist, not a lawyer. He must therefore rely on direction from counsel in considering whether to account for this information in his economic analysis of loss causation and damages.

---

[2] All citations to "Pl.'s Ex." herein are to exhibits attached to the Declaration of James E. Cecchi in Support of Lead Plaintiff's Pretrial Motions (Dkt. No. 392). All citations to "Defs.' Ex." herein are to exhibits attached to the Declaration of Lawrence S. Lustberg in Support of Defendants' Opposition to Plaintiff's Motion to Exclude Specific Opinions and Testimony of Dr. Paul Gompers.

An expert's opinion "may be based upon an assumption" so long as that assumption is "sufficiently grounded in sound methodology and reasoning to allow the conclusion it supports to clear the reliability hurdle" of Rule 702. *Brill v. Marandola*, 540 F. Supp. 2d 563, 568 (E.D. Pa. 2008). Typically, an expert's reliance on information provided by a party to the case is not a basis to exclude that report, and any questions "as to the sufficiency of an expert's factual basis are generally left to the jury." *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 926 n.45 (D.N.J. 2019) (citing *Brill*, 540 F. Supp. 2d at 568).

Prof. Gompers's assumption that the adjustment to Celgene's 2020 I&I Guidance is not at issue has, at the very least, a reasonable basis. Indeed, neither of the alleged misstatements concerning Otezla discuss the 2020 I&I Guidance or 2020 Otezla Projections. By Plaintiff's own recitation of the allegations, Curran's April 2017 statement about Otezla was misleading because the "Company's 2017 sales projection for Otezla was not reasonably attainable," Dkt. No. 363 ("PTO") at Pl.'s Contested Facts ¶ 106; and Curran's July 2017 statement about Otezla was misleading because it misrepresented "Current facts" about the "drug's performance in the second quarter of 2017" after Celgene disclosed that "Previous 2017 Guidance" for Otezla was "Unchanged," *id.* ¶ 117. These are statements about Otezla's 2017 guidance. Plaintiff has never alleged that any statements, at any point in time, about the 2020 I&I Guidance or 2020 Otezla Projections were false or misleading. Nor did Plaintiff engage in any actions across the seven years of this litigation to explore the 2020 Otezla Projections.

Indeed, Plaintiff took more than twenty-five depositions in this case, and, with the exception of its September 29, 2022 deposition of Prof. Gompers, never asked a single question about the 2020 Otezla Projections. Nor did Plaintiff serve any interrogatories about the 2020 Otezla Projections or even mention them in its opposition to Defendants' motion to dismiss.

To suggest otherwise, Plaintiff points to a single sentence from the Court's opinion on Defendants' motion to dismiss, in which the Court acknowledged that Celgene lowered its 2020 I&I Guidance in Q3 2017. Pl.'s Br. at 4 (citing Dkt. No. 75 ("MTD Op.") at 47). That fact is not in dispute. But the Court's acknowledgment of that fact does not mean that the adjustment to Celgene's 2020 I&I Guidance corrected the alleged misstatements about the 2017 guidance that have been Plaintiff's exclusive focus. Indeed, in that same motion to dismiss opinion, the Court described the alleged misstatements as mischaracterizing Celgene's ability to meet its 2017 Otezla guidance. *See* MTD Op. at 28 ("Plaintiff alleges that Defendants made misrepresentations and omissions as to Celgene's ability to meet its 2017 Otezla sales projections. . . . Specifically, Plaintiff alleges that Defendants failed to disclose material facts that undermined the 2017 Otezla sales projection as discussed above.").

In short, Prof. Gompers's assumption that revisions to the 2020 I&I Guidance are not at issue is "sufficiently grounded in sound methodology and reasoning" to satisfy Rule 702. *Brill*, 540 F. Supp. 2d at 568.[3]

### B. Prof. Gompers's Testimony Concerning the 2020 Otezla Projections Will Assist the Jury's Consideration of Loss Causation and Damages.

In addition, Prof. Gompers's testimony regarding the 2020 Otezla Projections will be helpful to the jury. It is Plaintiff's burden to prove that a drop in share price reflects a correction of Defendants' alleged misrepresentations and not "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005); *see also Bricklayers & Trowel Trades Int' Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 95 (1st Cir. 2014) ("When proving loss causation in a securities fraud suit,

---

[3] Plaintiff's citation to *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 400 (N.D. Ga. 2019), does not support its argument—as the court in that case actually denied the plaintiff's motion to exclude Prof. Gompers's expert testimony, holding that the plaintiffs' contention that his opinions were "inconsistent with legal standards" did not preclude admissibility and could be "weigh[ed] by the trier of fact." *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, No. 17-cv-241, 2019 WL 2482399, at *6 (N.D. Ga. Jun. 12, 2019). Plaintiff's other cited case, *Dominguez on Behalf of Himself v. Yahoo, Inc.*, is irrelevant, as the testimony there failed to address the disputed factual issue—one specific to claims under the Telephone Consumer Protection Act—at all. 894 F.3d 116, 120–121 (3d Cir. 2018) ("Because it does not shed light on the key factual question actually at issue in this case—whether the Email SMS System functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers—the Snyder Supplemental Declaration, like the other expert reports, lacks fit or relevance and was therefore properly excluded.").

plaintiffs 'bear[] the burden of showing that [their] losses were attributable to the revelation of the fraud and not the myriad other factors that affect a company's stock price.'") (quoting *In re Williams Sec. Litig.*, 558 F.3d 1130, 1137 (10th Cir. 2009)).

In this motion, the Court need not decide whether the revision to Celgene's 2020 I&I Guidance is "corrective" of the alleged misstatements.[4] However, if this issue is left to the jury, and the jury finds that the adjustment to the 2020 I&I Guidance is confounding and thus must be excluded from any assessment of damages, it will have no information regarding what that means economically. Thus, Prof. Gompers's testimony would assist the trier of fact as to an essential element of Plaintiff's case. *See Schiff*, 602 F.3d at 173 (citing *Daubert*, 509 U.S. at 591).

And even if the jury were to decide that the 2020 I&I Guidance revision is part of the alleged corrective disclosure, Prof. Gompers's reliance on an alternative assumption would not confuse the jury, which could simply disregard this portion of Prof. Gompers's analysis. *See Apotex, Inc. v. Cephalon, Inc.*, 321 F.R.D. 220, 233 (E.D. Pa. 2017) ("[A]n expert's reliance on [allegedly] faulty information is a matter to be explored on cross-examination; it does not go to admissibility.") (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013)).

[4] Defendants explain in greater detail why the 2020 I&I Guidance is confounding in Defendants' Motion to Exclude the Testimony of Plaintiff's Proffered Expert Witness Dr. David Tabak. *See* Dkt. No. 396.

## II. Prof. Gompers's Opinions Are Grounded in Economic Principles and Do Not Purport to Set Forth Any Legal Standards.

Plaintiff complains that Prof. Gompers "offers two inadmissible opinions setting forth and misapplying the loss causation standard." Pl.'s Br. at 6. But Plaintiff confuses the issues. Prof. Gompers's challenged opinions are rebuttal opinions based on principles of financial economics and do not purport to set forth any legal standard. Rather, they represent an economic analysis that will assist the trier of fact in determining whether Plaintiff has met its burden as to loss causation and damages. Accordingly, Prof. Gompers's testimony should not be excluded.

### A. Prof. Gompers Does Not Opine that Plaintiff Must Identify a Hypothetical "But-For" Disclosure to Establish the Legal Element of Loss Causation.

Plaintiff argues that Prof. Gompers "conflates the elements of reliance and loss causation by opining that it is necessary to identify a hypothetical, but-for disclosure to prove loss causation," and that this "misstates the law and 'misleadingly implies that but-for causation is the legal standard' for loss causation." Pl.'s Br. at 7.

But, in his expert report, Prof. Gompers makes clear that identifying a but-for disclosure is one of the steps that a financial economist must take to "***measure the losses***, if any, caused by the correction of the alleged misrepresentations" (*i.e.*, measuring recoverable damages). Pl.'s Ex. 27 ("Gompers Report") ¶ 28 (emphasis added). This is distinct from establishing the loss causation element of a Rule 10b–5 claim, which focuses on "whether the defendant should be held responsible as a matter

of public policy for the losses suffered by the plaintiff." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 222 (3d Cir. 2006). Prof. Gompers has not opined, and will not opine at trial, that the identification of a but-for disclosure is a necessary component of establishing the loss causation element of a Rule 10b–5 claim. Instead, the Court will instruct the jury on the requirements necessary to establish loss causation as a matter of law, and juries are required to follow a court's instruction. *See Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 394 n.7 (3d Cir. 2020) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). And Prof. Gompers's economic analysis, which includes a consideration of the but-for disclosure, will assist the jury in its broader determination of whether Plaintiff has adequately established the legal elements of loss causation and damages.

Moreover, the challenged opinions rebut the affirmative opinions of Dr. Tabak, who himself opined on but-for disclosures, thereby opening the door to Prof. Gompers's critiques. *See Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004) ("Rebuttal evidence is properly admissible when it will 'explain, repel, counteract or disprove the evidence of the adverse party.'") (internal citation omitted). Dr. Tabak's report states that loss causation (a) requires measuring the magnitude of the stock price reaction to the disclosure of allegedly corrective information, and (b) involves reference to information that could have been disclosed previously (*i.e.*, a but-for disclosure). *See, e.g.,* Defs.' Ex. 1 ("Tabak Report") ¶ 27 ("Had Defendants disclosed accurate market-share and performance metrics and accurate guidance, then investors would not have

suffered the losses identified above related to Otezla.").[5] There is nothing improper about Prof. Gompers rebutting this testimony.

Plaintiff cites *In re Apple Inc. Sec. Litig*, No. 19-cv-2033, 2023 WL 4556765 (N.D. Cal. July 17, 2023) to suggest that an opinion about loss causation is improper. Pl.'s Br. at 7. But in that case, the court excluded merely one sentence of an expert's report—while allowing the rest of the expert opinion—because it may have misled the jury about the legal standard for loss causation. *Apple*, 2023 WL 4556765, at *10. This is not a risk here, where Prof. Gompers says nothing about the relevant legal standard and instead frames his analysis as an "***Economic*** Analysis of Loss Causation in Section 10(b) Cases." Gompers Report § V.A. Prof. Gompers's opinion is thus like the expert testimony that was permitted in *Apple*, for which the court held that the expert properly opined on but-for causation in the context of measuring economic loss, because he was rebutting the plaintiffs' expert's opinions on the but-for value of the defendant corporation's securities. *Apple*, 2023 WL 455675, at *10.[6]

---

[5] Indeed, in his deposition, Dr. Tabak testified that identifying the but-for disclosure was necessary "in order to establish loss causation." Defs.' Ex. 2 ("Tabak Dep.") 113:23–114:14 ("Q: ***Do you agree that in order to establish loss causation, a financial economist needs to take multiple steps, one of which includes identifying the but-for disclosure,*** meaning the information that defendants allegedly could and should have disclosed instead of the alleged misrepresentations? A: I think broadly, I think that obviously if it's getting into very particular scientific facts, that's not going to be what a financial economist does, but the general scope of what should be disclosed, ***yes***.") (emphasis added).

[6] Plaintiff's other cited cases are inapposite. *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1107–08 (S.D. Cal. 2012) (excluding defense expert's opinion

This is not the first time plaintiffs have attempted to mischaracterize Prof. Gompers's opinions on loss causation. In *In re Under Armour Sec. Litig.*, 730 F. Supp. 3d 172, 183 (D. Md. 2024), the plaintiffs similarly sought to exclude Prof. Gompers's report because it purportedly "contain[ed] inaccurate statements of law with respect to loss causation[,] set[ting] forth a standard for loss causation that conflicts with the" appropriate legal standard. The court denied the plaintiffs' motion to exclude, finding: "Plaintiffs' arguments mischaracterize Gompers' opinions as relating to establishing the legal element of loss causation. According to Gompers, he has not opined, and does not intend to opine at trial, that identification of but-for disclosures is a necessary component for establishing the loss causation element of a Rule 10b-5 claim." *Id.* at 184. So too here, and here as well the Court should reject the attempt.

Anticipating this response, Plaintiff asserts that "[i]t is no answer for Defendants to claim that Prof. Gompers was merely offering an 'economic' rather than a legal analysis," Pl.'s Br. at 10 n.3, and cites *SEC v. Ripple Labs, Inc.*, No. 20-cv-10832, 2023 WL 5670711 , at *22 (S.D.N.Y. Mar. 6, 2023). But in that case, the defendants "d[id] not dispute that" their expert was opining on "legal concepts." *Id.* Here, in contrast, Defendants do dispute this point, and Prof. Gompers has repeatedly explained that his

---

that, in order to show loss causation, the plaintiff must show that the corrective disclosures were made "in such a way that a reasonable investor can reasonably infer that a fraud has occurred"); *Intell. Ventures I LLC v. Xilinx, Inc.*, No. 10-cv-1065, 2014 WL 1814384, at *3 (D. Del. Apr. 14, 2014) (excluding expert's opinion on damages in a patent infringement case because the expert failed to even consider certain facts "based on his 'sense of fairness'").

opinions are grounded in concepts of financial economics. *See, e.g.,* Gompers Report ¶ 29 (describing steps "a financial economist needs to take" to analyze loss causation); Gompers Dep. 26:11–13 ("It sounds like you're asking me to render a legal opinion . . . and I can't do that.").

**B. Prof. Gompers Properly Addresses the Economic Relevance of Any Mismatch Between the Alleged Misstatements and Corrective Disclosures.**

Plaintiff complains that Prof. Gompers "misstates the law when he suggests that 'to reliably establish loss causation' Plaintiff must show a ***literal 'match'*** between the alleged misstatement and the corrective disclosure." Pl.'s Br. at 10 (emphasis added).

As an initial matter, Plaintiff mischaracterizes Prof. Gompers's opinions about the mismatch between the alleged misstatements and corrective disclosures. Nowhere in his report does Prof. Gompers claim that the misrepresentations must be a "literal" match, a "one-to-one correspondence," or a "mirror" of the alleged corrective disclosures. Pl.'s Br. at 10–11. Rather, Prof. Gompers explains that, from an economic perspective, the relationship between the alleged misrepresentations and corrective disclosures is critical for both establishing loss causation and measuring recoverable damages. Gompers Report ¶ 69; *id.* ¶ 28 ("[P]laintiff[] must reliably measure the losses, if any, caused by the correction of the alleged misrepresentations."). His opinions on that point are plainly admissible.

If the corrective disclosure does not actually correct the alleged misstatement, then the resulting stock price movement may not be attributable to the alleged fraud.

*See Bricklayers*, 752 F.3d at 95 ("[P]laintiffs 'bear[] the burden of showing that [their] losses were attributable to the revelation of the fraud and not the myriad other factors that affect a company's stock price.'") (citation omitted). Prof. Gompers thus opines that "Dr. Tabak has failed to address the mismatch between the alleged misrepresentation on July 27, 2017 and the alleged corrective disclosure on October 26, 2017. Accordingly, he has not reliably established a link between the alleged misrepresentation and the alleged corrective disclosure." Gompers Report ¶ 69; *see also In re Xerox Corp. Sec. Litig.*, No. 99-cv-2374, 2009 WL 8556135, at *5 (D. Conn. Apr. 2, 2009) (allowing Prof. Gompers to testify that the corrective disclosure did not relate to the fraud alleged in the complaint because "experts are allowed to give an opinion on loss causation").

Moreover, the Supreme Court has discussed the relevance of a mismatch between an alleged misrepresentation and an alleged corrective disclosure for purposes of assessing recoverable damages:

> Plaintiffs typically try to prove the amount of inflation indirectly: They point to a negative disclosure about a company and an associated drop in its stock price; allege that the disclosure corrected an earlier misrepresentation; and then claim that the price drop is equal to the amount of inflation maintained by the earlier misrepresentation. . . . But that final inference—that the back-end price drop equals front-end inflation—starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure.

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 123 (2021) (internal citation omitted). Academic literature describes a similar concept. A widely cited article

explains that when "the stock price on the disclosure date reflected more information than just a correction of prior statements," the market's reaction to the later alleged corrective disclosure does not accurately measure alleged inflation. Bradford Cornell & R. Gregory Morgan, *Using Finance Theory to Measure Damages in Fraud on the Market Cases*, 37 UCLA L. Rev. 883, 891 (1990).

Thus, Plaintiff's mischaracterizations of his testimony aside, Prof. Gompers's opinions on the importance of the match between the alleged misrepresentations are rooted in well-accepted principles of financial economics, and are highly relevant to critiquing Dr. Tabak's opinions on loss causation and damages. As such, they should not be excluded.

## III. Prof. Gompers's Use of the Phrase "Known to the Market" to Characterize Public Information Is a Common Term of Art, Not an Improper Opinion About State of Mind.

Plaintiff argues that Prof. Gompers's opinions concerning "what was 'known to the market' . . . are inadmissible state of mind opinions that should be excluded." Pl.'s Br. at 12. Defendants have already agreed that experts may not offer opinions as to third parties' state of mind. *See id.* at 12 n.5. This portion of Plaintiff's motion is unnecessary and premised entirely on misleading semantics.

Prof. Gompers has opined, and will testify at trial, about information that was publicly available to investors concerning Celgene. Contrary to Plaintiff's assertions, Prof. Gompers will not opine on any individual's "state of mind" or "understanding" when discussing information about Celgene that was publicly available. *Id.* at 12.

Instead, in his report, he specifically cites analyst reports as evidence that information was "known to the market." *See* Gompers Report ¶ 55 (citing analyst reports from Barclays, Credit Suisse, and Citi, to support his opinion that "the risk that the 2017 revenue guidance for Otezla would not be met was known to the market"); *id.* ¶¶ 82–83 (citing analyst reports from Cantor Fitzgerald, RBC, Credit Suisse, and Zacks, to support his opinion that "the risk that there would be approval delays or an outright rejection for Ozanimod to treat MS was known to the market"). Indeed, even according to Plaintiff's cited caselaw, such testimony is properly within the scope of Rule 702. *United States v. Schiff*, 538 F. Supp. 2d 818, 846 (D.N.J. 2008) (holding that the defendants' expert "does not have the expertise necessary to opine on what analysts subjectively knew" but can use analyst reports "to show public information that was objectively available to analysts to use").[7] Courts have analyzed publicly available information by asking what was "known to the market." *See In re DVI, Inc. Sec. Litig.*, No. 03-cv-5336, 2013 WL 56083, at *6 (E.D. Pa. Jan. 4, 2013) ("Nonetheless, the record does not show that anything new became ***known to the market*** on that day.") (emphasis added); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 500-01 (E.D. Pa. 2022) ("Defendants are correct that, by definition, because the AP story was a

[7] Plaintiff's other cases are about what market participants "did or did not understand," *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 577 (S.D.N.Y. 2017), or what they "actually understood" or "should have understood," *SEC v. Daifotis*, No. 11-cv-137, 2012 WL 2051193, at *5 (N.D. Cal. June 7, 2012). Prof. Gompers will not offer any testimony concerning these topics.

republication, all the information contained in both articles was ***known to the market*** since the *Post-Gazette* first published the story on October 21st.") (emphasis added).

## IV. Prof. Gompers's Opinions on Materialization of Known Risks Address the Proper Economic Methodology for Disaggregating Damages.

Plaintiff claims that "Prof. Gompers also offers the improper legal opinion that Dr. Tabak did not 'establish loss causation' because he did not disaggregate a speculative stock price reaction to the materialization of purportedly 'known' risks," and that "[t]his opinion conflates the law as to loss causation and damages and risks significant jury confusion." Pl.'s Br. at 13.

As an initial matter, Plaintiff concedes that Prof. Gompers's opinions on the materialization of known risks are relevant for establishing the measure of economic losses for the purpose of measuring recoverable damages. *See id.* at 14.

With respect to loss causation, as discussed *supra*, Prof. Gompers does not purport to set forth the legal standard for the loss causation element of a Rule 10b–5 claim. But, in any event, Prof. Gompers's opinions are consistent with the requirement that Plaintiff show that the drop in share price reflects a correction of Defendants' alleged misrepresentations and not "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura*, 544 U.S. at 343. Prof. Gompers's opinion that Plaintiff has failed to disaggregate

"known risks" is thus also relevant to the jury's consideration of the element of loss causation.

Moreover, Dr. Tabak clearly presents what he believes to be affirmative evidence on this point, thus opening the door to rebuttal testimony from Prof. Gompers. Pl.'s Ex. 29 (Tabak Reply Report) ¶¶ 22, 25 ("The Gompers Report's Arguments Regarding a Materialization of a Known Risk with Regard to Otezla Sales Is Theoretically Incorrect and Ignores Analyses in the Tabak Report. . . . [E]mpirically, this was already ***explicitly addressed in the Tabak Report***, which adopted a conservative approach of limiting damages to the lower of inflation at the time of each misrepresentation and the dissipation of inflation upon the October 26, 2017 corrective disclosure.") (emphasis added). Because Prof. Gompers accurately critiques Dr. Tabak for failing to account for confounding information—something that plaintiffs are required to do to show loss causation—his testimony should not be excluded.

## V. Prof. Gompers's Opinions Regarding the Potential Compounding Effect of Prior Negative News Are Grounded in Analyst Commentary.

Plaintiff argues that Prof. Gompers's opinion that "the price declines on October 26, 2017, and February 28, 2018, 'may have' or 'could have' been greater than what they would have been if Celgene had disclosed the truth earlier, due to a potentially compounding effect of previous negative disclosures" is "speculative and unreliable." Pl.'s Br. at 15–16. Plaintiff is incorrect.

In addressing the compounding effects of prior negative news, it is Plaintiff's burden to establish that their proposed measure of inflation reflects the price decline that would have occurred if the allegedly appropriate but-for disclosure—*i.e.*, the information correcting the alleged misstatements—had been disclosed earlier. *See Dura*, 544 U.S. at 343. When, as in the current case, plaintiffs attempt to measure earlier inflation using stock price declines following alleged corrective disclosures, meeting that burden requires establishing that the stock price decline following the alleged corrective disclosure is the same as the stock price decline that would have occurred if the allegedly appropriate but-for disclosure had been made at the time of the alleged misrepresentations. *Apple*, 2023 WL 4556765, at *10 (permitting defense expert to testify that plaintiff's expert "fail[ed] to assess the extent to which the but-for disclosure that could and should have been made matches the actual alleged corrective disclosures"). Prof. Gompers's testimony that "a compounding effect of previous negative disclosures" may have contributed to the price declines on October 26, 2017, and February 28, 2018, thus critiques Dr. Tabak's incomplete methodology for establishing the amount of economic losses (if any) caused by the alleged misrepresentations and measuring recoverable damages. Gompers Dep. 24:4–8 ("I'm a rebuttal expert, and . . . I've been asked to offer rebuttal opinions to Dr. Tabak's calculation of loss causation and damages.");[8] *see also Crowley*, 322 F. Supp. 2d at 551.

---

[8] Note that Prof. Gompers is rebutting Dr. Tabak, who states that the portion of the price decline following alleged corrective disclosures that is attributable to the

And Prof. Gompers's criticism is neither unreliable nor speculative, as it is based on analyst commentary that he cites in his report. *See, e.g.,* Gompers Report ¶ 66 (citing to analyst reports from William Blair and Cowen commenting "on the increased scrutiny on the Company's management credibility, pipeline of drugs, and revenue guidance"); *id.* ¶ 67 (citing to analyst reports from JMP Securities, Wells Fargo, and Cantor Fitzgerald discussing the change in guidance announced on October 26, 2017 "in the context of broader concerns" at that time regarding Celgene); *id.* ¶ 89 (citing to analyst reports from Piper Jaffray, Citi, and Cowen suggesting that "the price reaction following the February 27, 2018 alleged corrective disclosure could have reflected, at least in part, the market's revised expectation about Celgene's . . . ability to develop or acquire drugs in the future"). Analyst commentary thus supports the impact on Celgene's stock price from the "repeated setbacks," including the direction of that impact. *Id.* (citing a Piper Jaffray report discussing a reduction in its estimates for Celgene "on the heels of missteps with GED-0301 and Otezla"). Such testimony will assist the jury in evaluating Dr. Tabak's methods for disaggregating confounding

---

alleged misrepresentations represents loss causation. *See* Tabak Report ¶ 18 ("Thus, the statistically significant price movements following each of the three corrective disclosure events indicate that each of the corrective disclosures revealed material information and caused losses to investors. Any portion of those price movements attributable to the allegations, as discussed in the next section, would represent '***loss causation***.'" *Id.* (emphasis added).

information. *Schiff*, 538 F. Supp. 2d at 846 (holding that expert testimony concerning "factual summaries" of analyst reports is admissible and useful to the jury).

Plaintiff's reference to the exclusion of Prof. Gompers's expert testimony in *United States v. Martoma* is not relevant to this issue. 993 F. Supp. 2d 452, 458–59 (S.D.N.Y. 2014). In that case, Prof. Gompers was retained by a defendant accused of insider trading, and he performed a valuation analysis of the company's stock. The court ultimately excluded the analysis because it deemed Prof. Gompers's conclusion that the stock was "overheated" not "probative on the central question of materiality—whether the alleged inside information provided to Martoma would have been important to a reasonable investor at the time." *Id.* That is a fundamentally different issue from what Prof. Gompers addresses here, where he criticizes Dr. Tabak's failure to adequately disaggregate confounding information—as Dr. Tabak was required to do, *Dura*, 544 U.S. at 343—by highlighting a series of negative announcements whose context may have amplified the stock price impact of new information on the dates of the alleged corrective disclosures.[9]

[9] Plaintiff retorts that Prof. Gompers's opinions are unreliable because he did not conduct his own "event study." Pl.'s Br. at 17. But "a rebuttal expert has no burden to produce models or methods of their own." *Arlanxeo Canada, Inc. v. Kaydon Ring & Seal, Inc.*, No. 21-cv-1843, 2025 WL 964258, at *12 (M.D. Pa. Mar. 31, 2025); *see also Complaint of Borghese Lane, LLC,* No. 18-cv-533, 2023 WL 3114851, at *3 (W.D. Pa. Apr. 27, 2023) ("[R]ebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives.").

## VI. Prof. Gompers's References to Post-Class Period Events Are Used to Rebut Dr. Tabak's Damages Methodology, Not to Opine on Falsity or Scienter.

Finally, Plaintiff argues that Prof. "Gompers's introduction of events occurring long after the end of the Class Period to criticize Dr. Tabak's loss causation analysis of the April 29, 2018 Morgan Stanley Report relies on a clear misapplication of the loss causation standard and would result in substantial jury confusion and prejudice." Pl.'s Br. at 18.

Once again, Plaintiff makes clear that its argument is premised on the same mischaracterization of Prof. Gompers's claims regarding hypothetical disclosure. *Id.* at 19. As discussed *supra*, Prof. Gompers has opined that identification of a but-for disclosure is a step that a financial economist must take to "***measure the losses***, if any, caused by the correction of the alleged misrepresentations," (*i.e.*, measuring recoverable damages). Gompers Report ¶ 28 (emphasis added). He does not purport to opine that the identification of a but-for disclosure is necessary for establishing the loss causation element of a Rule 10b-5 claim.

Indeed, Prof. Gompers's rebuttal opinions are useful to the jury because they highlight that Dr. Tabak has failed to take into account that the April 29, 2018 Morgan Stanley report—one of Plaintiff's two alleged corrective disclosures concerning Ozanimod—included incorrect information. More specifically, Dr. Tabak does not and cannot explain how Defendants could have disclosed Morgan Stanley's faulty speculation in the corrective disclosure (*i.e.*, that Celgene would have to rerun preclinical

toxicology studies that could take up to two years) at the time the alleged Ozanimod misstatements were made. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 562 n.34 (D.N.J. 2010) (while analyst reports can serve as corrective disclosure, "vague and speculative reports" are insufficient).

And as discussed in Defendants' Opposition to Plaintiff's Motion to Preclude Evidence Post-Dating the Alleged Otezla Misstatements, *see* Dkt. No. 426, the fact that Prof. Gompers discusses facts that post-date the class period does not mean his opinions should be excluded. Indeed, post-class period evidence may be relevant where it "sheds light" on a required element of a Rule 10b-5 claim. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 245 n.11 (3d Cir. 2013).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiff's Motion to Exclude Specific Testimony and Opinions of Prof. Gompers should be denied.

Dated: May 19, 2025
Newark, New Jersey

Respectfully submitted,
*s/ Lawrence S. Lustberg*

Lawrence S. Lustberg
Kate E. Janukowicz
**Gibbons P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Tel: (973) 596-4500
Email: llustberg@gibbonslaw.com
Email: kjanukowicz@gibbonslaw.com

Nina Yadava
Rajeev Muttreja
Sarah D. Efronson
**Jones Day**
250 Vesey Street
New York, New York 10281
Tel: (212) 326-3690
Email: nyadava@jonesday.com
Email: rmuttreja@jonesday.com
Email: sefronson@jonesday.com

Kevin M. McDonough
**Latham & Watkins LLP**
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
Email: kevin.mcdonough@lw.com

Andrew Clubok
Susan E. Engel
**Latham & Watkins LLP**
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004-1304
Tel: (202) 637-2200
Email: andrew.clubok@lw.com
Email: susan.engel@lw.com

Michele D. Johnson
**Latham & Watkins LLP**
650 Town Center Drive
20th Floor
Costa Mesa, California 92626-1925
Tel: (714) 540-1235
Email: michele.johnson@lw.com

*Attorneys for Defendants*