# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------x
In Re: Case No. 18-cv-04772 (JMV) (JBC)

CELGENE CORPORATION
SECURITIES LITIGATION

------------------------------------x
***CONFIDENTIAL***

WEDNESDAY, NOVEMBER 9, 2022

Remote Video-Recorded Deposition of

DAVID I. TABAK

Stenographically Reported By:
Mark Richman, CSR, CCR, RPR, CM
Job No. 217826

D. TABAK - CONFIDENTIAL

complete the testing in your view is not materially different from a hundred percent based on Paragraph 30 of the complaint and your conversation with plaintiffs' counsel, correct?

MR. MUSTOKOFF: Objection to form.

A. I'm not saying that's in my view. I'm saying that is really when we went back over earlier what assumptions did I follow, I followed the assumptions that that is what plaintiffs are alleging. I'm not saying independently that it's my view. I have no particular independent view of the risks of an RTF. I'm taking that as an assumption of the theory of the case being presented by plaintiffs.

Q. And I'm asking you what -- strike that.

You say later on in Paragraph 42 "Put differently, plaintiffs' theory of liability is that Celgene should have disclosed information that would have



D. TABAK - CONFIDENTIAL

caused the market to believe with essentially 100 percent probability that Celgene would receive an RTF for its Ozanimod filing, exactly what was disclosed on February 27, 2018." Correct?

A. I state that as, the start of the sentence talks about plaintiffs' theory of liability, yes.

Q. Right. I read, I read that part, correct?

A. I'm not sure. I may have missed it, but that's fine. I believe you did then.

Q. And what information do you understand plaintiffs believe should have been disclosed to the market?

MR. MUSTOKOFF: Objection to form.

A. I believe the court actually described it as something about evidence of the metabolite and information on how that would affect the NDA. We can look. I've quoted that. But I basically think



D. TABAK - CONFIDENTIAL

it's ultimately, you know, the existence of a metabolite and it can actually be the material that Morgan Stanley found or Morgan Stanley or somebody would have found that from the Receptos posters.

But very broadly, the evidence of the existence of the metabolite --

Q. As regards Ozanimod, do you have an opinion as to what the but-for disclosure should have been?

MR. MUSTOKOFF: Objection to form, calls for a legal conclusion.

A. I would think it would read essentially as the evidence of the existence of the metabolite. Ideally, we could also include the information in the Receptos posters but I would assume that would not actually be in Celgene's disclosures but the market would have discovered it the same way basically that Morgan Stanley did.

Q. Anything other than -- and with regards to evidence of the existence of a metabolite, what should the specific



D. TABAK - CONFIDENTIAL

disclosure have been in your opinion?

MR. MUSTOKOFF: Objection, calls for a legal conclusion.

A. I was going to say more calls for a scientific conclusion. I think that I treat it as very similar to what the company said in April of 2018.

Q. On April 25th, 2018 when the company disclosed the existence of a metabolite?

A. Well, it would have been whatever evidence they had related to that, you know. You're -- don't -- I'm not a scientific expert here, but the evidence they had that ultimately, you know, combined with whatever else it led them to make the April 25th disclosure, I think the beginning of the class period plaintiffs' theory is that they should have disclosed that evidence that was in existence at the time.

Q. Do you agree that in order to establish loss causation, as financial economist needs to take multiple steps,

D. TABAK - CONFIDENTIAL

one of which includes identifying the but-for disclosure, meaning the information that defendants allegedly could and should have disclosed instead of the alleged misrepresentations?

MR. MUSTOKOFF: Objection, calls for legal conclusion.

A. I think broadly, I think that obviously if it's getting into very particular scientific facts, that's not going to be what a financial economist does, but the general scope of what should be disclosed, yes.

MR. MICHELETTO: Matt, this might be a good time to break for lunch.

MR. MUSTOKOFF: Sure.

THE VIDEOGRAPHER: Time is 12:27 p.m., we are now off the record.

(Luncheon recess.)



D. TABAK - CONFIDENTIAL

A F T E R N O O N S E S S I O N

(1:25 p.m.)

THE VIDEOGRAPHER: The time is 1:25 p.m., we are back on the record.

DAVID I. TABAK, resumed, having been previously duly sworn, was examined and testified further, as follows:

CONTINUED EXAMINATION

BY MR. MICHELETTO:

Q. Welcome back, Dr. Tabak. Hope you enjoyed your lunch, even if it was only 45 minutes.

A. It was fine, thank you.

Q. Generally speaking, what is a but-for disclosure?

MR. MUSTOKOFF: Objection to form. And I'm objecting to the extent you're looking for a legal conclusion.

A. I was going to say, all my answers here are as I understand it not actual legal conclusions, but my understanding from financial economic



D. TABAK - CONFIDENTIAL

perspective and damages perspective, it's the statements that allegedly should have been made or should have been made differently, made correctly, by defendants.

Q. Did you, for purposes of your analysis regarding Ozanimod, did you identify what you considered to be the but-for disclosure?

A. Yes, it's as we discussed before the break, the scope, meaning the evidence of the metabolite. I didn't identify this particular test and that particular, you know, result from some analysis. But the category of the evidence of the metabolite that Celgene had available to it.

Q. At what point in time?

A. At the misrepresentation date.

Q. At the beginning of the class period or -- or other dates during the class period?

A. At the beginning of the class period.



D. TABAK - CONFIDENTIAL

Q. Do you have any understanding of what evidence of the metabolite Celgene had at the beginning of the class?

A. That is a little too scientific and detailed for me, so I could not describe that.

Q. Okay. The disclosure about the existence of the metabolite that Celgene made on April 25th, 2018, is that the, what you think to be the but-for disclosure?

MR. MUSTOKOFF: Objection to form.

A. I think it may be a bit different. I'd want to actually, you know, look again at exactly what they said. But, you know, to the extent it is anything scientific I'm not going to be able to tell you the difference. I'm going by the theory in the complaint that it was the evidence that they had regarding the existence of the metabolite and I understand they hadn't, you know, identified a particular