**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
COUNSELLORS AT LAW

September 16, 2025

<u>**VIA ECF**</u>
Honorable Michael E. Farbiarz, U.S.D.J.
Frank R. Lautenberg U.S. Post Office & Courthouse
2 Federal Square
Newark, New Jersey 07102

**Re:** *In re Celgene Corp. Securities Litigation*, Case No. 2:18-cv-04772-MEF-JBC

Dear Judge Farbiarz:

Lead Plaintiff Tjänstepension AB ("AMF") opposes Defendants' request for leave to file a motion to dismiss the Fourth Amended Complaint ("FAC"). ECF 473. The Court instructed that Defendants "need to seek leave" to "move to dismiss the *narrow* newly-filed complaint." ECF 467. The only new allegations in the FAC pertain to the assignment of AMF Fonder's claims to its sister fund AMF. *See* ECF 405. Rather than contest these new allegations, Defendants seek to stall the impending trial by pointing to out-of-Circuit case law to argue, at the eleventh hour in this seven-year-old case, that their Ozanimod misstatements—which omitted any mention of the belatedly-discovered Metabolite and the risks it posed to Celgene's new drug application ("NDA")—are non-actionable, immaterial statements of opinion. Their request should be denied.

Prior to last Friday night, Defendants had ***never*** argued that the Ozanimod misstatements are statements of opinion. Now, on the brink of trial—and having just characterized the Ozanimod statements as "forward looking" statements in their belated effort to file a Rule 12(c) motion (ECF 402)—Defendants recast the Ozanimod statements as opinions. They are not. As Judge Vazquez found years ago, they are "actionable half-truths." ECF 75 at 35-39. Accordingly, the Ozanimod statements are not governed by *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408 (2d Cir. 2023) ("*PMI*") and *Homyk v. ChemoCentryx, Inc.*, No. 21-cv-3343 (N.D. Cal. Aug. 15, 2025)— two non-controlling cases in which those courts found alleged misstatements to be opinions reflecting subjective interpretations of trial data. Moreover, unlike the courts' findings in those cases, here the FDA provided unequivocal feedback (mirroring well-established FDA guidance) to Celgene regarding the data needed to support the NDA, expressly disapproved Celgene's request for an exception to provide the data after the submission, ***and*** rejected the deficient NDA.

The Ozanimod misstatements relate to ***facts*** about the status of the NDA and omit material facts needed to make the statements made not misleading—they are not opinions about the interpretation of trial data. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (a fact is a "thing done or existing" or "[a]n actual happening," whereas an opinion is "a belief[,] a view, or a sentiment which the mind forms of persons or things"). In denying Defendants' motion to dismiss, Judge Vazquez accepted AMF's argument that the Ozanimod statements were "actionable ***half-truths***": "[B]y telling investors that it submitted the NDA, Defendants were required to disclose the known shortcomings of Celgene's submission." ECF 75 at 35, 39; *see also id.* at 36 ("Celgene's disclosure was materially incomplete and misleading" as it "was required to also disclose meaningful information as to the Metabolite vis-à-vis the NDA"); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263-64 (2024) ("Half-truths . . . state the truth only so far as it goes, ***while omitting critical qualifying***

Page 2

*information*.").

Defendants offer no basis to disturb the law of the case. Indeed, Judge Vazquez's prior holding is wholly consistent with the decisions of courts in the Third Circuit finding that statements about the timing or progress of an NDA submission are misleading if they "paint[] a favorable picture without including the details that would have presented a complete and less favorable one." *Tomaszewski v. Trevana, Inc.*, 482 F. Supp. 3d 317, 331 (E.D. Pa. 2020) (statements that company expected to advance "an NDA submission in the second half of 2017" actionable where "at the time the defendant made the statements, he knew that the NDA was deficient because the studies did not conform to FDA requirements and **the FDA had failed to endorse the defendants' approach**"); *see also Levon v. CorMedix, Inc.*, 2025 WL 2400346, at *11 (D.N.J. Aug. 19, 2025) (holding that "statements regarding the timeline for FDA approval created a parallel duty to disclose the issues at [the] facility impeding the proscribed timeline"). Similar to these in-Circuit cases, Celgene selectively disclosed that it was on track to submit, and later that it had submitted, the NDA based on Phase III trial results without telling investors about the Metabolite, the lack of required data, the need for further testing, or the FDA's rejection of Celgene's proposal to submit supplemental data after the NDA submission. These are classic half-truths. *Omnicare*, 575 U.S. at 192 ("[L]iteral accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another.").

Even if the Ozanimod statements were opinions, they are actionable under *Omnicare* because Defendants misled investors by "'omit[ting] material facts about the issuer's . . . knowledge' of the evidence for and against the opinion." *In re Maiden Holdings, Ltd. Sec. Litig.*, 2025 WL 2406864, at *5 (3d Cir. Aug. 20, 2025) (reversing grant of summary judgment). As the Third Circuit recently reaffirmed in *Maiden*, "[w]e have long held that materiality questions demand 'delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts [that] are peculiarly for the trier of fact.'" *Id.* at *8.[1] Where Defendants "hide the single most important evidence"—here, the existence of the Metabolite, the need for additional testing, and the FDA's explicit rejection of their plan to submit the NDA without sufficient LTS data— the materiality of such an omission is for the jury. *Id.* at *9.

Defendants also ignore *SEC v. Chappell*, 107 F.4th 114 (3d Cir. 2024), a Third Circuit decision involving FDA feedback to a pharmaceutical company that the criteria for issuance of an emergency use authorization "are unlikely to be met" and suggesting that the company conduct additional clinical trials. *Id.* at 121. The defendant ignored the FDA feedback and filed the EUA, which—similar to here—the FDA denied. On appeal, the defendant argued unsuccessfully that Judge Vazquez erred in finding that the FDA feedback was material and should have been disclosed. The Third Circuit held that "a reasonable investor would have viewed the interim FDA feedback more like an advance notice of a certain rejection rather than part of an ongoing conversation," *id.* at 131-32, approving Judge Vazquez's words from the bench: "I understand if you're negotiating with a regulatory agency and they said, 'At this stage it's insufficient, but if you do A, B, and C, there may be an opportunity.' . . . **But here the FDA said, 'This is what we're going to need,' and your clients didn't do it**." *Id.* at 135. This is very similar to the facts of this

---

[1] In addition, knowing about the Metabolite and the attendant risks, Defendants could not have subjectively believed their statements touting the progress of the NDA. Thus, if considered opinions, the Ozanimod statements would be actionable under at least two of the three *Omnicare* prongs. *See City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 686 (3d Cir. 2023).

Page 3

case. Here:

- Defendants were warned in June 2017 that "[r]regulatory agencies will not consider data validated due to lack of long-term stability (LTS) data." ECF 284-1, ¶ 21.
- In November 2017, the FDA explicitly rejected Celgene's request to submit an incomplete NDA by year-end and backfill the missing LTS data *after* the submission. *Id.*, ¶ 29.
- Houn, VP of Global Regulatory Science, warned that "***the risk for RTF is real***," stressing that the FDA was clear: missing LTS data "must" be submitted with the NDA. *Id.*, ¶ 55.
- After Celgene received the RTF, Defendant Curran admitted to the Board of Directors that the RTF was "consistent with the pre-NDA meeting feedback." *Id.*, ¶ 64. Lamb, Head of Regulatory Affairs, wrote that "***FDA repeatedly stated what they expected, it was ignored and we got a RTF***." *Id.*

In contrast, the court in *Homyk* found that the alleged misstatements there were "***opinions*** largely dealing with Defendants' interpretations of trial data or scientific methodology." Order, *Homyk v. ChemoCentryx, Inc.*, No. 21-cv-3343, ECF 345 at 8 (N.D. Cal. Aug. 15, 2025). Even the sole "timing" misstatement in *Homyk* reflects the defendant's explicit "confidence" it would meet the NDA filing target because of the "superlative results achieved" in a "pivotal" clinical trial which "exceeded most expectations." Compl., *Homyk*, ECF 47, ¶ 312. *Homyk*'s holding rests on the court's finding that this statement, like the other 100+ statements in *Homyk*, reflected a subjective interpretation of study data. *Homyk* Order at 17-18 (considering ¶ 312 as misleading investors about "efficacy" results). Here, AMF is challenging Defendants' materially incomplete disclosure touting the NDA filing without informing investors about the Metabolite or the FDA's explicit rejection of Celgene's proposed approach. *Homyk*'s erroneous suggestion that certain opinions issued by pharmaceutical companies may be "*per se* reasonable" when the FDA approves an NDA does not apply here where the FDA ***rejected*** the original NDA.[2] It also conflicts with the Third Circuit's rejection of a "context-blind" rule in *Maiden*. 2025 WL 2406864, at *8 (such an approach "is inconsistent with our precedent and that of the Supreme Court").

*PMI* is also distinguishable. There, statements that PMI's studies were "conducted according to Good Clinical Practice ('GCP')" were deemed opinions because the CGP requirements themselves necessitate "inherently subjective" "assessments" as to "[w]hether a clinical trial is 'sound,' whether a researcher is 'qualified,' and whether resources are 'adequate.'" 89 F.4th at 419. Likewise, statements that the drug "has the potential to reduce the risk of smoking-related diseases" expressed opinions involving the interpretation of trial data, which the FDA's approval ultimately endorsed. *Id.* at 421 (cleaned up). Here, Defendants' statements were not premised on inherently subjective assessments. And again, the FDA ***rejected*** Celgene's proposal to submit incomplete data (unbeknownst to investors) and then refused to file the deficient NDA.[3]

Respectfully Submitted,

---

[2] Indeed, in *Homyk,* the FDA told the defendants that the NDA appeared adequate for submission and subsequently ***accepted*** the NDA for filing on the first go-round. *See* Defendants' Motion for Summary Judgment, *Homyk*, No. 21-cv-3343, ECF 279 at 8 (prior to NDA submission, defendant submitted overview of trial results to FDA in advance of pre-NDA" meeting and "***FDA confirmed that the data 'appear[ed] adequate to support filing of the NDA***'"; "By law, FDA's acceptance meant the NDA was 'sufficiently complete to permit a substantive review.'").

[3] Defendants' other cited cases (ECF 473 at 2) are similarly inapposite. *See Bazzelle v. Novocure Ltd.*, 2025 WL 843668, at *15-17 (S.D.N.Y. Mar. 18, 2025) (inactionable statement about the defendants' "confidence level" that a clinical was "well balanced," a subjective and standardless term); *Pitman v. Immunovant, Inc.*, 2024 WL 1342737, at *5-8 (E.D.N.Y. Mar. 29, 2024) (inactionable statements challenging that a drug was "safe" and "well-tolerated").

CARELLA BYRNE CECCHI
BRODY & AGNELLO, P.C.

*/s/James E. Cecchi*
James E. Cecchi